UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AFSHIN GALESTAN, Individually, and on Behalf of All Others Similarly Situated, ) ) | Case No.  17- CV-1016 |
| ) | |
| Plaintiff, ) | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| ) | |
| vs. ) | CLASS ACTION |
| ) | |
| ONEMAIN HOLDINGS, INC, JAY N. LEVINE and SCOTT T. PARKER, ) ) | DEMAND FOR JURY TRIAL |
| ) | |
| Defendants. ) ) | |
| ) | |

Plaintiff, Afshin Galestan, individually, and on behalf of all others similarly situated, alleges the following against OneMain Holdings, Inc. ("OneMain" or the "Company"), Jay N. Levine ("Levine"), and Scott T. Parker ("Parker") (collectively, "Defendants"), based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings, review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties,   a review of news articles and shareholder communications, and a review of other publicly available information concerning OneMain, the other Defendants, and related non-parties.    Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all purchasers of the common stock of OneMain between February  25, 2016 and November 7, 2016, inclusive (the "Class Period"), seeking remedies pursuant to §§10(b) and 20(a) of the federal securities laws.

## PARTIES

2.      Plaintiff, Afshin Galestan, purchased OneMain common stock during the Class Period as described in the Certification attached hereto, and incorporated herein by reference, and suffered damages thereon.

3.      Defendant OneMain is a Delaware corporation, with its principal executive offices located in Evansville, Indiana. OneMain provides loan products for customers throughout the United States.

4.      Defendant Levine is, and was throughout the Class Period, OneMain's Chief Executive Officer ("CEO"), President, and a member of its Board of Directors.

5.     Defendant Parker is, and was throughout the Class Period, OneMain's Chief Financial Officer ("CFO") and an Executive Vice President.

6.     Defendants Levine and Parker are collectively referred to herein as the "Individual Defendants."

7.     During the Class Period, the Individual Defendants served as OneMain's executive management, and oversaw the Company's operations and finances.   The Individual Defendants were intimately knowledgeable about all aspects of OneMain's financial and business operations. They were also intimately involved in deciding which public disclosures would be made by OneMain.   The Individual Defendants made various public statements for OneMain during the Class Period, and participated in Class Period investor conferences.

## JURISDICTION AND VENUE

8.     Jurisdiction and venue are proper in this District under Section 27 of the Exchange Act (15 U.S.C. §78aa), and under 28 U.S.C. §1391(b), because OneMain conducts business in this District and a substantial part of the events or omissions giving rise to the claims plead herein occurred in this District.

## BACKGROUND TO THE CLASS PERIOD

9.     OneMain provides consumer finance and insurance products and services. It provides personal loans secured by consumer household goods, and other personal property; unsecured loans; and loans secured by subordinate residential real estate mortgages. The Company also offers auto loans for purchasing new vehicles, as well as to pay off the consumer's existing auto loans. In addition, it writes credit life, disability, involuntary unemployment, and related property and casualty insurance products, as well as non-credit insurance products; and offers home and auto membership plans. As of April 27, 2016, it provided services at approximately 1,800 branches in 43 states.

10.     In March 2015, OneMain Financial Holdings ("OneMain Financial"), a subsidiary of Citigroup, was sold to Springleaf Holdings, Inc. ("Springleaf") for $4.25 billion. The sale came five months after OneMain Financial filed a registration statement with the SEC for an initial public offering, which was later withdrawn. OneMain Financial was Springleaf's biggest competitor at the time of the sale.

11.     Upon finalizing the acquisition of OneMain Financial in November 2015, Springleaf changed its name to OneMain Holdings, Inc.  OneMain has a market capitalization of $2.92 billion, and reported revenue of approximately $928 million, as of September 30, 2016.

## DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS

12.     The Class Period starts on February 25, 2016.  On February 25, 2016, OneMain issued an earnings release announcing its fourth quarter 2015 financial results.  It was the first release from the Company since its acquisition of OneMain Financial. In the press release, Defendant Levine lauded the acquisition of OneMain Financial, stating in pertinent part as follows:

> EVANSVILLE, Ind.--(BUSINESS WIRE) -- OneMain Holdings, Inc. (NYSE:OMF) today reported a GAAP basis net loss of $219 million, or ($1.63) per diluted share, for the fourth quarter of 2015.
>
> After tax Core Earnings (a non-GAAP measure) for the quarter was $105 million, and after tax Core Earnings per Diluted Share (a non-GAAP measure) was $0.77. Weighted average diluted shares outstanding increased to 134.5 million for the fourth quarter of 2015 from 114.8 million for the prior year quarter as a result of the company's issuance of 19.4 million common shares on May 4, 2015.
>
> Jay Levine, President and CEO of OneMain Holdings said, "***During the fourth quarter, we completed the most significant transaction in our company's long history - the acquisition of OneMain Financial.*** We have brought together two leading providers of personal loans, and we now serve almost 2.5 million customers through our nationwide footprint of over 1,800 branches. The new OneMain has the potential to drive strong

overall returns through greater scale and enhanced credit performance."

Levine added, "2015 was a very successful year for us as we met or exceeded *all* of the company's performance goals, and we are *well-positioned for continued success in 2016 as we execute on the very significant opportunities presented by the combination of the former Springleaf and OneMain*."

13.   The Company held a conference call with investors the evening of the February 25, 2016 earnings release. Defendant Levine spoke extensively on the positive impact the acquisition of OneMain Financial would have on the Company, stating in pertinent part as follows:

> *This is our first earnings report since we closed on the acquisition of OneMain. So we want to focus on how the combination of our companies has positioned us to create enhanced shareholder value.*
>
> ****
>
> The financial metrics shown represent actual 2015 results for Springleaf and OneMain, as if we had been combined for the full year. *What it doesn't yet reflect are any synergies from the acquisition, any assumptions from stronger growth at OneMain, or any of the planned changes in the portfolio mix that drive lower losses.* And without any of those potential benefits, the business today generates a very strong after tax return on receivables of over 4%.
>
> ****
>
> The combination with OneMain creates opportunities for us to drive attractive returns by combining our greater scale with new products and broader underwriting capabilities. *The potential impact of scale benefits can clearly be seen in the over 400 basis point difference between Springleaf's operating expense ratio of 13.3% versus OneMain at 9.2%, and you can see how much operating leverage we will derive from this.*

14.   Defendant Parker also participated in the conference call, and discussed the benefits of the acquisition, and the positive prospects the Company had going forward, stating in pertinent part as follows:

- 4 -

On a historical basis, which is our traditional way of reporting, we had core earnings in the fourth quarter of $105 million, or $0.77 per share. This includes the results of OneMain for the full month of November and December. As we closed on OneMain at the end of the third quarter, *we would have earned about $1 per share, which we view as our baseline earnings going forward, and importantly, with no benefits of synergies from the acquisition or growth.*

****

As we begin to realize the benefit from growth, credit performance and operating expense synergies, we are projecting a core EPS in 2016 in the range of $4.50 to $5.00. Which takes into consideration the lost earnings from the sale of the $600 million to Lendmark. With the 2016 EPS amount anticipated to grow to the range of $6.20 to $6.70 per share in 2017. We are mindful of the current market volatility and uncertainty and the challenging capital markets. We are hopeful that the markets find firm footing, but as you can tell from our comments this morning, we feel good about the prospects of our business, *especially including the benefits of the OneMain acquisition.*

15.     Defendant Parker further participated in the Question and Answer portion of the conference call, and in response to a question regarding whether the earnings guidance had already incorporated expense synergies, he stated:

"Yes, it does, so as we talked about, that was trying to get to the $275 million by the end of 2017, so it will have a portion of that in 2016, and then the bigger piece will be in 2017, as we kind of do a lot of the front end integration and bring the companies together."

16.     Defendant Parker was also questioned about the cost savings expectations between 2017 versus 2016, about which he stated:

I think the number was kind of on getting to an annualized rate in 2017. Right now, for 2016, *we have kind of have line of sight, and have identified about $100 million of annual savings that will be executed over the course of the year*. We've taken some actions already in the first couple months of the year, but we'll continue to do that throughout the year on different initiatives. And then the second piece is really in 2017, as we talked about the build-out in the fourth quarter, prior to the fourth quarter,

- 5 -

once we are able to get off the TSA with Citi, and get the systems fully integrated, that is when we start to see, in 2017, a big benefit.

17.     The 2016 and 2017 prospects were also discussed in the conference call when an analyst asked Executive Vice President, Dave Hogan, if the Company expected higher charge-off rates embedded in the EPS guidance number in 2017 versus 2016, to which Mr. Hogan responded, "no, we're expecting improvement, actually, over 2016 in 2017."

18.     On February 29, 2016, OneMain filed its Form 10-K annual report for fiscal year 2015 with the SEC. The Company reported a net loss of $122 million, a loss on earnings per share of $1.89, a decrease in revenue of $571 million, and an increase in expenses of $224 million, as compared to fiscal year 2014. The Company attributed the loss to the acquisition of OneMain Financial.

19.     The statements referenced above in ¶¶12-18 were each materially false and misleading because they failed to disclose, and misrepresented, the following adverse facts known by Defendants during the Class Period:

(a)     the potential impact of the scale benefits from the combination with OneMain Financial was uncertain, could not "clearly be seen," and did not accurately show how much operating leverage would be derived;

(b)     Defendants did not have a "line of sight" which identified about $100 million of annual savings to be obtained during the year;

(c)     differences between underwriting standards at OneMain and Springleaf would negatively impact the combined company's ability to generate loan and revenue growth; and

(d)     As a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company, its earnings and prospects.

20.     On April 6, 2016, the Company released a statement announcing an offering of "up to $400 million" in unsecured senior notes, through Springleaf, with a maturity date of 2020, and "no assurance that the offering of the notes will be consummated."

21.     One day after announcing the offering, the Company announced that it had "priced $1 billion" of the senior notes offered. The offering was "upsized from $400 million to $1 billion", with a majority of the funds being used to repurchase all of Springleaf's outstanding notes.

22.     On May 4, 2016, OneMain issued a press release announcing its first quarter 2016 financial results for the reporting period ended March 31, 2016.  The press release emphasized the success of the acquisition of OneMain Financial, and the positive outlook for the rest of fiscal year 2016, stating in pertinent part as follows:

> EVANSVILLE, Ind.--(BUSINESS WIRE)-- OneMain Holdings, Inc. (NYSE:OMF) today reported GAAP basis net income of $153 million, or $1.13 per diluted share, for the first quarter of 2016. Net Income includes a $229 million pretax net gain on the previously announced sale of the company's interests in SpringCastle.
>
> After tax Core Earnings (a non-GAAP measure) for the first quarter of 2016 was $141 million, and after tax Core Earnings per Diluted Share (a non-GAAP measure) was $1.05. Weighted average diluted shares outstanding increased to 134.9 million for the first quarter of 2016 from 115.0 million for the prior year quarter as a result of the company's issuance of 19.4 million common shares on May 4, 2015.
>
> Jay Levine, President and CEO of OneMain Holdings, Inc. said, "This quarter represents the first full quarter since we completed the acquisition of OneMain, and *we could not be more pleased with the results we have achieved thus far. The combination of Springleaf and OneMain has had an immediate, and very positive impact on our core earnings which, excluding SpringCastle, grew from $0.35 per share in last year's first quarter to $0.94 in this year's first quarter*. We also made significant progress on driving incremental growth at the former OneMain, with higher levels of originations, particularly in the strategically key area of secured lending. *Integration activities are on schedule, resulting in greater operational efficiencies, even as*

- 7 -

*we continue to provide our customary high level of personalized service."*

Levine added, "We also made material progress on strengthening our capital base, enhancing our liquidity and extending our debt maturities, all of which simplify our financial picture and help position us for sustained earnings growth and strong returns."

23.     During the May 4, 2016 investor call, Defendant Levine spoke extensively about the Company's "great" first quarter in 2016, and the Company's focus on generating growth and profits for shareholders, namely through the OneMain Financial acquisition, stating in pertinent part as follows:

First, let me begin by saying that we had a great first quarter. ***And with our acquisition of OneMain [Financial] now behind us, we are well positioned to generate stable and growing earnings for the foreseeable future.***

****

Using full year 2015 numbers and assumingly on OneMain for the full year, we would have generated an after-tax return on receivables of 4.1%, reflecting virtually no revenue or portfolio enhancement or cost savings from the acquisitions. We will discuss our guidance update later in the call, but the financial model you see here positions us quite well to achieve the targets we have outlined. The nature of our model is such that even with modest receivables growth drives greater earnings growth.

As the company and management team, our objective is to deliver long-term shareholder value by generating strong and sustainable returns on capital. We have consistently worked toward that objective and you have seen the results at Springleaf since our IPO almost 3 years ago. We have generated profitable growth in both receivables and more importantly, earnings and taking critical steps to dramatically improve our business and balance sheet. We are in a great business that is virtually impossible to replicate and is capable of generating the kinds of returns we plan to deliver. Having completed the acquisition of OneMain [Financial], we have significantly increased the earnings power of our company and accelerated the timetable for us to achieve our targeted return on receivables with an expectation of reaching an ROE north of 25% at our target leverage.

*I want to highlight how the acquisition significantly increases our earnings power.* As we think about capturing the benefits of the acquisition, our principal focus is on reinvigorating growth at OneMain, which supports our objective of driving profitable growth and improving long-term credit performance. We are off to a great start on these initiatives and Scott [Parker] will discuss that in greater detail. *We also have a great opportunity to generate enhanced positive operating leverage through scale and cost efficiencies as we benefit from higher levels of originations across our largely fixed cost branch network*. In addition, *we have also made meaningful progress on reducing the absolute level of operating costs as we work on integrating the two companies.*

Further, we have taken a number of very significant strength – steps to strengthen our capital base and simplify our balance sheet. We have reduced leverage and build capital through a combination of earnings and capital friendly initiatives such as the sale of SpringCastle and we are continuing to look at opportunities to optimize other non-core assets. We are also focused on maintaining access to a variety of funding sources which we will speak to in greater detail later on as well. Now, less than six months after closing and with the early results from a number of the initiatives, *we feel even more positive about the acquisition which has already having a meeting fully positive impact on our operating results.*

24.     Defendant Parker reinforced Defendant Levine's positivity and stated that the Company "expect[ed] the integration of [Springleaf and OneMain Financial] to lead to a meaningful improvement in [the] operating expense ratio," explaining that "the drivers of this improvement will be headquarter cost synergies, the branch sales we announced yesterday and by realizing the continued benefits of scale as we grow receivables against our largely fixed cost branch network."

25.     On the conference call, Defendant Parker discussed the importance of expense reductions in the integration process of OneMain Financial, and how such cost-cutting would allow for larger growth and benefits in the future, stating in pertinent part as follows:

We also continue to target reductions in our operating expenses as the integration processes. So far this year, we have completed the realignment of the headquarter functions, generating about $40 million of run rate cost savings and the recently closed branch sale

to Lendmark will generate another $50 million in run rate cost savings. We expect to achieve an additional $10 million in savings over the balance of this year bringing us to our original projection of $100 million in annualized cost saves by the end of this year. Overall, we look for a total of $275 million to $300 million in run rate savings based on the standalone pro forma business plans for the two companies, with about two-thirds of that being expense reductions and one-third cost avoidance. As recapture these cost saves and drive lower OpEx, the scale benefits result in a meaningful improvement in operating leverage. Working from a 2015 pro forma operating expense ratio of 10.65, we are projecting approximately 9% for this year, dropping down to approximately 8% in 2017.

26.     Defendant Parker reviewed the EPS guidance for 2016 and 2017 in the conference call, with focus on positive leverage and the Company's continued maintenance of prior-stated guidance, stating as follows:

I would like to review our core EPS guidance for 2016 and 2017 and illustrate the positive operating leverage in our model. First, for 2016, we are maintaining our prior guidance but adjusting it by $0.30 to reflect the sale of SpringCastle and the impact on earnings for the last three quarters this year, which brings us to a range of $4.20 to $4.70 per share. For 2017, we are following the same approach with about half the change in the guidance coming from the SpringCastle impact and half due to the higher expected funding costs as I just explained. This brings us to a range of $5.60 to $6.10 for 2017. To illustrate the tremendous operating leverage in the business, we are projecting about a 10% to 15% growth in receivables from 2016 to 2017 and with the benefits of scale, we expect this to lead to even greater than 30% growth in earnings per share using the midpoint of the guidance ranges.

27.     On May 6, 2016, the Company filed its first quarter Form 10-Q with the SEC. The Company reported an increase in net income of $122 million, earnings per share of $1.13, an increase in revenue of $82 million, and an increase in expenses of $239 million, as compared to the first quarter in 2015. The Company attributed these numbers to the sale of SpringCastle Holdings, LLC, a wholly-owned subsidiary of OneMain.

28.     The statements referenced above in ¶¶20-27 were each materially false and misleading because they failed to disclose and misrepresented the following adverse facts known by Defendants during the Class Period:

(a)      the combination of Springleaf and OneMain Financial was not having the immediate, positive impact on core earnings that defendants described to investors, and that integration activities were not on schedule and were not resulting in the greater operational effectiveness that defendants discussed;

(b)     the acquisition of OneMain Financial had not significantly increased the earnings power of the Company, and had not accelerated the timetable to achieve a targeted return on receivables with an expectation of reaching an ROE north of 25%;

(c)     the Company had not made meaningful progress on reducing the absolute level of operating costs of integrating OneMain Financial and Spring Leaf;

(d)     differences between underwriting standards at OneMain and Springleaf would negatively impact the combined company's ability to generate loan and revenue growth; and

(e)     As a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company, its earnings and prospects.

29.     On August 4, 2016, OneMain announced its second quarter 2016 financial results for the reporting period ended June 30, 2016.  Defendant Levine continued to praise the success of the Company and reaffirmed the outlook for the remainder of 2016, stating in pertinent part as follows:

> EVANSVILLE, In.--(BUSINESS WIRE)-- OneMain Holdings, Inc. (NYSE:OMF) today reported income before provision for income taxes of $42 million and net income of $26 million, or $0.19 per diluted share, for the second quarter of 2016.

Jay Levine, President and CEO of OneMain Holdings, Inc. said, "Our second quarter results reflect the benefits of the ongoing transformation of our company as we continue to integrate the acquisition of OneMain. We had strong performance on credit, operating expenses, funding, and growth. Our Consumer and Insurance segment delivered strong results for the second quarter of 2016, reflecting the immediate and positive impact of the acquisition on our earnings, with adjusted earnings per diluted share for our Consumer and Insurance segment up 2.5 times versus last year."

Levine added, "We also importantly made progress on strengthening our capital base, enhancing our liquidity, and diversifying our funding sources. *As we continue to execute on the integration of the two companies, we are further strengthening our foundation for continued growth and strong returns."*

30.     During the conference call with investors held that evening, Defendant Levine reiterated the Company's confidence in its full-year guidance and emphasized that the integration of Springleaf and OneMain was going smoothly, stating in pertinent part as follows:

I want to say that the second quarter was a very good quarter for us with consumer insurance EPS of $0.96 versus $0.36 in last year's quarter, with solid performance on credit, growth, operating expenses, funding and importantly, integration….***The timing of our integration activities is meeting all of our expectations and [in] some cases, [is] even ahead of plan.***

****

***The integration of Springleaf and OneMain remains on track and I would like to share a couple of highlights of our progress.*** First, later this year we plan a full rebranding of the Springleaf branch into OneMain which will allow us to present one unified branch to our customers and further enhance the recognition of the OneMain brand. Second, ***we have made meaningful progress on implementing the technology integration required of the two networks.*** By bringing the two branch networks together under one technology platform, we will be well positioned to generate incremental growth and meaningful cost savings.

****

> *[W]e remain confident in our full-year charge-up guidance of 6.8% to 7.3% and from where we [are] today, believe we're likely to come in near the midpoint of the range.*

****

> With the acquisition of OneMain, we have fundamentally transformed the earnings power of our Company. In fact*, virtually tripling it from where we were on a standalone basis*. In addition we have made significant strides in reducing the leverage that we took on to fund the deal. With our largely fixed-cost base, additional asset growth is highly accretive to earnings and we're on track to generate a lower OpEx ratio than either company had as a standalone operator. *The integration and the related cost savings give us built-in earnings growth and improved operating leverage.*

> We remain comfortable with our previously stated EPS guidance for 2017 of $5.60 to $6.10 per share, with average receivables of $16 billion. Importantly, as we look out over the longer term, both market demand as well as the compelling nature of our business model are such that future asset growth drives progressively higher returns as you can see in the chart on the side. As you can imagine, this would produce very strong ROEs.

31.    During the same conference call, Defendant Parker repeated Defendant Levine's reassurances and further emphasized the positive effect the acquisition of OneMain Financial was having on the Company, stating in pertinent part as follows:

> *I would like to highlight our progress on capturing the expense benefits from the merger and driving operating leverage.* First, let's go back to where we started and where we're planning to go. Premerger Springleaf, with a smaller footprint, was running at about 13% operating expense ratio. OneMain, with greater scale in terms of branches and recievables per branch, was running at about 9%. The blend of the two companies in the fourth quarter of 2015, at the time of close, was around 10.8%. Through the first six months since the acquisition, we have already dropped down that ratio to about 10% through the combination of expense reductions and asset growth. We're now on a quarterly run rate of about $325 million, reflecting $100 million of annualized saves for the first quarter 2016 levels, mainly from headquarter consolidation and the branch sale. *We expect continued momentum going into 2017 as we complete the systems and branch integration.*

- 13 -

32.     On August 5, 2016, the Company filed its second quarter Form 10-Q with the SEC. The Company reported net income of $26 million and earnings per share of $0.19. The Company announced a change in its accounting policies in order to "enhance consistency with [the Company's] industry peers." The Company recorded an increase in shareholders' equity of $42 million directly attributable to the change in accounting policy.

33.     The statements referenced above in ¶¶29-32 were each materially false and misleading because they failed to disclose and misrepresented the following adverse facts known by Defendants during the Class Period:

(a)     the integration of Springleaf and OneMain Financial was not going smoothly and the timing of integration activities was not meeting expectations and plans;

(b)     the Company had not made meaningful progress on implementing the required technology integration;

(c)     differences between underwriting standards at OneMain and Springleaf would negatively impact the combined company's ability to generate loan and revenue growth;

(d)     there was no reasonable basis to state that the Company's full-year charge-up guidance would fall between 6.8% and 7.3%;

(e)     the combination of OneMain Financial and Springleaf had not tripled the Company's earning power; and

(f)     As a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company, its earnings and prospects.

**THE TRUTH IS REVEALED**

34.     On November 7, 2016, after the close of trading, OneMain reported its third quarter 2016 earnings for the period ended September 31, 2016. The release stated, in pertinent part, as follows:

- 14 -

EVANSVILLE, Ind.--(BUSINESS WIRE)-- OneMain Holdings, Inc. (NYSE: OMF) today reported income before provision for income taxes of $33 million and net income of $25 million, or $0.19 per diluted share for the third quarter of 2016, compared to a loss of $0.10 per diluted share in the prior year.

Jay Levine, President and CEO of OneMain Holdings, Inc. said, "Our third quarter results reflect the progress we have made on our strategic priorities and the integration of OneMain. In fact, our Consumer and Insurance segment adjusted earnings per diluted share more than doubled from last year."

Levine added, "We continued to grow receivables, manage credit risk, further strengthen our liquidity and balance sheet, and realize synergies from the acquisition of OneMain. We also accomplished the significant task of combining the two branch networks under a single brand, which will further enhance our name recognition and our ability to offer competitive products to our customers."

35.     During the conference call with investors held that evening, Defendant Levine finally conceded that the integration of OneMain Financial was not going as smoothly as previously announced. Defendant Levine stated that "we have seen productivity decline in the OneMain network impacting both growth and credit", and that management "knew there would be a number of tasks including the implementation of a unified underwriting system, building an integrated digital strategy, rebranding our Springleaf offices and converting to a single loan management system." Defendant Levine's statements, in pertinent part, are as follows:

Second, the numbers in the chart on the left are the combined number to the two portfolios and reflect a much larger percentage of unsecured loans. And we expect to manage over time. Third, delinquency was up from the second quarter. This increase was due to normal seasonality, ***and to the impact of recent integration activity to the former OneMain branches.***

***We believe the impact of integration from the former OneMain network led to an incremental increase of 20 basis points in early stage delinquencies to the whole portfolio at the end of the third quarter.***

Finally, as we look ahead to expected charge-offs for full year 2017, we are anticipating a higher loss range than we had shared earlier, now 7.2% to 7.6% and the first-half 2017 charge-offs

- 15 -

expected to be elevated as we go through this integration. Our revised credit outlook is partly related to denominator effect with less expected near term growth in receivables on our books. *As well as link to the uptick delinquencies we anticipate experiencing through the integration.*

\*\*\*\*

*As our integration activities accelerate in the third quarter, the amount of change we asked of our branch team members simply kept them from bringing a historical level of focus on new business and collections. In addition, we postponed a number of growth initiatives in light of the need to focus on the integration. As we think about our earnings from the integration over the past few months, and as we approach the final stages of our branch systems conversion, we now expect minimal growth to former OneMain until the integration is completed in the first-half of next year with a growth expected to pick up in the second-half of the year.*

\*\*\*\*

Accordingly, we are resetting our consumer insurance adjusted EPS guidance for 2016 to a range of $3.60 to $3.70 per share. For 2017, we are lowering our target for total C&I ending net receivables by about $2 billion taking into account the full branch integration that we anticipate completing in the first quarter. This reduction in receivables has led us to update our 2017 C&I adjusted EPS guidance of $3.75 to $4 per share.

36.    Later in the call, Defendant Levine fielded questions from analysts regarding the turnaround on the integration outlook, the discussion, in pertinent part, is as follows:

**Moshe Orenbuch**

Thanks I'm sort of hoping that you could give us a little more detail in terms of the integration issues and what causes them actually to kind of be removed and allow for growth in loans and maybe in a little more detail over the next couple of quarters, because I mean we spoke more than a month into this quarter. *And it wasn't apparent at that time that this level of disruption was going to go on.*

And so, if there's a way you could kind of be a little more detailed as to what happened and why it's going to be repaired over a period of time that would be helpful.

- 16 -

**Jay Levine**

Sure. This was a quarter that compared to very everything that's happened in the past was the most active quarter we've had. And in particular it was pretty active late in the quarter as we began to position for the rebranding. While we were operating two independent networks, one Springleaf, one OneMain, business largely continued as it is. ***We knew certain things were going to have to happen to ultimately operate as one brand, which we did beginning October 1, OneMain, the biggest single component of that being in aligned underwriting and pricing model. That was rolled out in September.***

So I'd say as we look back over the previous year that really the biggest changes occurred late in the third quarter. ***There were things that we have been working on for some time, but clearly they had more of an impact on business really what we would say in September and ultimately in October than possibly we anticipated. But it was - the way the two companies went about their business was slightly different in terms of underwriting processing of loans and marketing and all that came together.***

And on both sides there was an adjustment. So I'd say that has been dealt with basically now in the system and being worked through. As I think I also alluded to in October - on October 1, we converted two states from what had been the former operating system of OneMain Symphony to the Springleaf system to make sure the systems all work. And we are very pleased that that has all transpired.

****

**Richard Shane**

I think Moshe focused on this, I think we need to delve on this a little bit more is on the integration. And that is creating pressure in terms of loan growth through the remainder of this year, but it looks like that that actually you'd continue into next year. In fact, we are not only emerging from 2016 at a lower level that the run rate in 2017 or through 2017 is going to further be below previous expectations.

I'm really curious like what's the demand at the branch level that changed for the originators that's caused a significant flattening of originations, and why is that a more fundamental shift?

**Jay Levine**

[In sort of a way] [ph], I think you nailed the couple of few big ones, you're right there is a little bit more in the way of credit that when in to the numbers. But I'd say look the biggest one is the

- 17 -

delta on receivables, which is origination. And the originations the numbers have come down for a couple of reasons, one is the environment, and I'd say is the slightly different way, which is as we look at the environment *in particular some of the weaker customers. We are now saying happy to make the loans. But we want collateral as we align the underwriting of two companies, and as I think I alluded to not every customer wants to pledge the collateral and that means we are going to be slower growth as a result of that.*

And again that's being prudent around additional that they may have today with they may take on in the future. I think are thinking around post-integration is we wind up getting back to a similar level of growth in the double-digit - low- to mid- double-digit and sustainable bear over time so long as the economy base where did, *but it relates to the integration, we do think that's a near-term thing we're going through.*

****

**Mark DeVries**

Yeah, thanks. Jay, *I think you're pretty clear that that you believe most of the impact on the credit outlook is due to integration.* And maybe I missed this. But do you also feel that most of the moderation in the growth outlook is also due to the integration as opposed to the increase in competition that you alluded to?

**Jay Levine**

Certainly, yes, I'd say - when I talk about the lower volumes and integration, it's a couple of things. *Certainly there's new underwriting and other things that have to be done. But I also said to the weakest of our borrowers we are requiring collateral and some of that we would have done previously without collateral. And it's really the learning from that that has continued to bring that to enhance our models to look at underwriting over time. So some of it is probably a little bit of that, but I'd say the majority of it goes back to integration.*

**Mark DeVries**

Okay. And I think it sounds like the majority of the burden of the integration is falling on legacy OneMain as opposed to the legacy Springleaf. And is it fair to say then that you're seeing both the impact on credit and moderate growth, most of it coming through the legacy OneMain branches?

**Jay Levine**

Absolutely, Springleaf continues to grow with double-digits with delinquencies pretty much where we expected them to be. ***The elevation has really come for the OneMain branches.***

37.     Defendant Parker further conceded that the outlook for OneMain was not as positive as the guidance suggested, stating in pertinent part as follows:

[A]s we move to the integration, ***we are anticipating an uptick in delinquencies in the OneMain portfolio as well as a slower receivable growth on the OneMain branches.***

With that in mind, we expect the results to come under some pressure in the fourth quarter and the first-half of 2017 as we complete the branch integration. Additionally, given some of the near term elevation and early delinquencies, we build our non-TDR reserves in the quarter by $34 million or 19 basis points relative to prior quarter levels.

If current trends continue, we would anticipate some incremental reserve building in the fourth quarter as well.

38.     In accordance with the earnings release, the Company dramatically decreased its full-year guidance for 2016 and 2017, as illustrated in the chart below:

| Metric | Previous Guidance | New Guidance |
|---|---|---|
| Receivables growth in 2016 | 10% to 15% | 5% |
| Receivables growth in 2017 | 10% to 15% | 5% to 10% |
| C&I adjusted diluted EPS in 2016 | $4.20 to $4.70 | $3.60 to $3.70 |
| C&I adjusted diluted EPS in 2017 | $5.60 to $6.10 | $3.75 to $4.00 |

SOURCE: ONEMAIN'S Q3 2016 EARNINGS PRESENTATION.

39.     Upon the release of the after-hours news on November 7, the price of OneMain common stock plunged more than $10 per share, or 38.7%, to close at $16.90 per share on

November 8, 2016, on unusually high trading volume of more than 11 million shares trading, or nearly 16x the average daily trading volume.

## NO SAFE HARBOR

40.    Most of the false and misleading statements related to existing facts or conditions, and the Safe Harbor provisions have no applicability to such statements.  To the extent that known trends should have been included in the Company's financial reports prepared in accordance with GAAP, they too are excluded from the protection of the statutory Safe Harbor. 15 U.S.C. §78u-5(b)(2)(A).

41.    OneMain's "Safe Harbor" warnings accompanying its reportedly forward-looking statements issued during the Class Period were also ineffective to shield those statements from liability.   The Defendants are liable for any false or misleading forward-looking statements because, at the time each forward-looking statements was made, the speaker knew the forward-looking statements was false or misleading and the forward-looking statements was authorized and/or approved by an executive officer and/or director of OneMain who knew that the forward-looking statements were false.  In addition, the forward-looking statements were contradicted by existing, undisclosed material facts that were required to be disclosed so that the forward-looking statements would not be misleading.  Finally, most of the purported "Safe Harbor" warnings were themselves misleading because they warned of "risks" that had already materialized, or failed to provide meaningful disclosures of the relevant risks.

## ADDITIONAL SCIENTER ALLEGATIONS

42.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding OneMain, their control over, and/or receipt of modifications of OneMain's allegedly materially misleading misstatements, and/or their associations with the Company which made them privy to confidential proprietary information concerning OneMain, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

43.     At all relevant times, the market for OneMain's common stock was an efficient market for the following reasons, among others:

(a)     OneMain's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     The Company had more than 134 million shares outstanding as of December 21, 2016.  During the Class Period, on average, 705, 533 shares of OneMain stock were traded on a daily basis, demonstrating a very active and broad market for OneMain stock, and permitting a very strong presumption of an efficient market;

(c)     as a regulated issuer, OneMain filed periodic public reports with the SEC;

(d)     OneMain regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services, the Internet and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)     OneMain was followed by many securities analysts who wrote reports that were distributed during the Class Period.  Each of these reports was publicly available and entered the public marketplace; and

(f)     unexpected material news about OneMain was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

44.     As a result of the foregoing, the market for OneMain common stock promptly digested current information regarding OneMain from publicly available sources, and reflected such information in OneMain's stock price.   Under these circumstances, all purchasers of OneMain common stock during the Class Period suffered similar injury through their purchase of OneMain common stock at artificially inflated prices, and a presumption of reliance applies.

## LOSS CAUSATION

45.     During the Class Period, as detailed herein, Defendants made false and misleading statements, and omitted material information, concerning OneMain's business fundamentals and financial prospects and engaged in a scheme to deceive the market.

46.     By artificially inflating and manipulating OneMain's stock price, Defendants deceived Plaintiff and the Class, and caused them losses when the truth was revealed. Defendants' prior misrepresentations and fraudulent conduct became apparent to the market on November 7, 2016, causing OneMain's stock price to fall precipitously as the prior artificial inflation came out of the stock price.   As a result of their purchases of OneMain securities during the Class Period, Plaintiff and the other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

47.     This is a class action on behalf of those who purchased or otherwise acquired OneMain common stock between February 25, 2016 and November 7, 2016, inclusive, excluding Defendants (the "Class").   Excluded from the Class are officers and directors of the Company, as well as their families and the families of the Defendants.   Class members are so numerous that joinder of them is impracticable.

48.     Common questions of law and fact predominate and include whether Defendants: (a) violated the Exchange Act; (b) omitted and/or misrepresented material facts; (c) knew or recklessly disregarded that their statements were false; (d) artificially inflated the price of OneMain common stock; and (e) the extent of and appropriate measure of damages.

49.     Plaintiff's claims are typical of those of the Class.  Prosecution of individual actions would create a risk of inconsistent adjudications.  Plaintiff will adequately protect the interests of the Class.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### For Violation of Section 10(B) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder Against All Defendants

50.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

51.     Throughout the Class Period, Defendants OneMain and the Individual Defendants, in pursuit of their scheme and continuous course of conduct to inflate the market price of OneMain common stock, had the ultimate authority for making, and knowingly or recklessly made, materially false or misleading statements or failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

52.     During the Class Period, Defendants OneMain and the Individual Defendants, and each of them, carried out a plan, scheme, and course of conduct using the instrumentalities of interstate commerce and the mails, which was intended to and, throughout the Class Period did: (a) artificially inflate and maintain the market price of OneMain common stock; (b) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (c) cause Plaintiff and the other members of the Class to purchase OneMain common stock at inflated

prices; and (d) cause them losses when the truth was revealed.  In furtherance of this unlawful

scheme, plan and course of conduct, Defendants OneMain and the Individual Defendants, and

each of them, took the actions set forth herein, in violation of §10(b) of the Exchange Act and

Rule 10b-5, promulgated thereunder, 17 C.F.R. §240.10b-5.

53.      In addition to the duties of full disclosure imposed on Defendants OneMain and

the Individual Defendants as a result of their affirmative false and misleading statements to the

investing public, these Defendants had a duty to promptly disseminate truthful information with

respect to OneMain's operations and performance that would be material to investors in

compliance with the integrated disclosure provisions of the SEC, including with respect to the

Company's revenue and earnings trends, so that the market price of the Company's securities

would be based on truthful, complete and accurate information.  SEC Regulations S-X (17

C.F.R. §210.01, *et seq*.) and S-K (17 C.F.R. §229.10, *et seq*.).

54.      Defendants OneMain and the Individual Defendants had actual knowledge of the

misrepresentations and omissions of material facts set forth herein, or acted with reckless

disregard for the truth in that they failed to ascertain and disclose such facts, even though such

facts were either known or readily available to them.

55.      As a result of the dissemination of the materially false and misleading

information, and failure to disclose material facts as set forth above, the market price of

OneMain common stock was artificially inflated during the Class Period.  In ignorance of the

fact that the market price of OneMain common stock was artificially inflated, and relying

directly or indirectly on the false and misleading statements made knowingly or with deliberate

recklessness by Defendants OneMain and the Individual Defendants, or upon the integrity of the

market in which the shares traded, Plaintiff and the other members of the Class purchased

OneMain stock during the Class Period at artificially high prices and, when the truth was revealed, were damaged thereby.

56.     Had Plaintiff and the other members of the Class and the marketplace known of the true facts, which were knowingly or recklessly concealed by Defendants OneMain and the Individual Defendants, Plaintiff and the other members of the Class would not have purchased or otherwise acquired their OneMain shares during the Class Period, or if they had acquired such shares during the Class Period, they would not have done so at the artificially inflated prices which they paid.

57.     By virtue of the foregoing, Defendants OneMain and the Individual Defendants have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  17 C.F.R. §240.10-5.

## COUNT II

### For Violation of §20(a) of the Exchange Act
### Against the Individual Defendants

58.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

59.     The Individual Defendants had control over OneMain and made the material false and misleading statements and omissions on behalf of OneMain within the meaning of §20(a) of the Exchange Act as alleged herein.  By virtue of their executive positions and stock ownership, as alleged above, the Individual Defendants had the power to influence and control and did, directly or indirectly, influence and control the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends were false and misleading.   The Individual Defendants were provided with or had unlimited access to the Company's internal reports, press releases, public filings, and other statements alleged by

Plaintiff to be misleading prior to or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause them to be corrected.

60.    In particular, the Individual Defendants had direct involvement in and responsibility over the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein.

61.    By reason of such wrongful conduct, each of the Individual Defendants is liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of the Class, prays for judgment as follows:

A.    Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff, and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

LAW OFFICES OF CURTIS V. TRINKO, LLP

By:_____
Curtis V. Trinko
16 West 46th Street, 7th Floor
New York, New York 10036
Tel: (212) 490-9550
Fax: (212) 986-0168
Email: Ctrinko@trinko.com

HOLZER & HOLZER, LLC
COREY D. HOLZER
MARSHALL P. DEES
1200 Ashwood Parkway, Suite 410
Atlanta. GA  30338
Telephone: 770/392-0090
770/392-0029 (fax)

*Attorneys for Plaintiff*

**CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS**

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows - **List additional transactions on Schedule A, if necessary**:

Purchases:

| Ticker of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
|---|---|---|---|
| OMF | 12/18/2015 | 100 | 40.33 |
| | 1/6/2016 | 50 | 39.05 |
| | 1/13/2016 | 50 | 33.07 |
| | 6/14/2016 | 100 | 25.98 |

Sales:

| Ticker of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
|---|---|---|---|
| OMF | 11/8/2016 | 3075 | 17.12 |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

None

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___27___ day of ___January___, 2017 in ___New York___, ___New York___.
                                                          City                    State

(Signature) X _____

(Print Name) _____Afshin Galestan_____

SCHEDULE A

Purchases:

| Ticker of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
|---|---|---|---|
| OMF | 9/21/2016 | 50 | 29.97 |
| | 11/7/2016 | 2725 | 27.47 |

Sales:

| Ticker of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
|---|---|---|---|
| OMF | | | |