UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————x
AFSHIN GALESTAN, Individually and on   :   Civil Action No. 1:17-cv-01016-VM
Behalf of All Others Similarly Situated,   :
  :   <u>CLASS ACTION</u>
                     Plaintiff,   :
  :   MEMORANDUM OF LAW IN SUPPORT
     vs.   :   OF LEAD PLAINTIFF'S MOTION FOR
  :   FINAL APPROVAL OF SETTLEMENT
ONEMAIN HOLDINGS, INC., JAY N.   :   AND APPROVAL OF THE PLAN OF
LEVINE and SCOTT T. PARKER,   :   ALLOCATION
  :
                Defendants.   :
  :
——————————————————————x

4837-5422-9144.v3

## TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.......................................................2

III.  STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
      SETTLEMENTS.........................................................................................................2

      A.   The Law Favors and Encourages Settlements ..........................................2

      B.   The Settlement Must Be Procedurally and Substantively Fair, Adequate,
           and Reasonable ........................................................................................3

      C.   The Proposed Settlement Is Procedurally and Substantively Fair,
           Adequate, and Reasonable .......................................................................4

           1.   The Settlement Satisfies the Requirements of Rule 23(e)(2)......................4

                a.   Lead Plaintiff and Lead Counsel Have Adequately
                     Represented the Class ....................................................................5

                b.   The Proposed Settlement Was Negotiated at Arm's Length ..........5

                c.   The Proposed Settlement Is Adequate in Light of the Costs,
                     Risks, and Delays of Trial and Appeal ...........................................7

                     (1)   The Risks of Establishing Liability at Trial........................7

                     (2)   The Risks of Establishing Damages at Trial......................8

                     (3)   The Settlement Eliminates the Additional Costs and
                           Delay of Continued Litigation ............................................8

                d.   The Proposed Method for Distributing Relief Is Effective.............9

                e.   Attorneys' Fees ............................................................................10

                f.   The Parties Have No Other Agreements Besides Opt-Outs ..........11

                g.   Class Members Are Treated Equitably .........................................11

           2.   The Settlement Satisfies the Remaining *Grinnell* Factors........................11

                a.   The Lack of Objections to Date Supports Final Approval of
                     the Settlement................................................................................11

**Page**

|  | b. | Lead Plaintiff Has Sufficient Information to Make an Informed Decision as to the Settlement | 12 |
|---|----|---------------------------------------------------------------------------------------------|-----|
|  | c. | Maintaining Class Action Status Through Trial Presents a Substantial Risk | 14 |
|  | d. | Defendants' Ability to Withstand a Greater Judgment | 14 |
|  | e. | The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation | 15 |

| IV. | THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE | 16 |
|-----|----------------------------------------------|-----|
| V. | THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT | 17 |
| VI. | NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS | 18 |
| VII. | CONCLUSION | 20 |

4837-5422-9144.v3

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992)...............................................................................14

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132 (CM), 2014 WL 1883494
  (S.D.N.Y. May 9, 2014).......................................................................................12, 14

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)..................................................................................4, 13

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)........................................................................... *passim*

*Dover v. British Airways, PLC*,
  No. 12 CV 5567 (RJD) (CLP), 2018 U.S. Dist. LEXIS 174513
  (E.D.N.Y. Oct. 9, 2018) ..........................................................................................6

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).................................................................................................18

*Gormley v. Magicjack Vocaltec Ltd.*,
  No. 1:16-cv-01869-VM, slip op.
  (S.D.N.Y. Jan. 19, 2018).........................................................................................10

*Hicks v. Morgan Stanley*,
  No. 01 Civ. 10071 (RJH), 2005 WL 2757792
  (S.D.N.Y. Oct. 24, 2005) ..........................................................................................9

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ..................................................................2, 8, 16

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984),
  *aff'd*, 818 F.2d 145 (2d Cir. 1987).......................................................................15

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  MDL No. 1775, 2015 WL 5918273
  (E.D.N.Y. Oct. 9, 2015) ..........................................................................................16

*In re Am. Bank Note Holographics*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001).....................................................................16

4837-5422-9144.v3

**Page**

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
No. MDL 1500, 2006 WL 903236
(S.D.N.Y. Apr. 6, 2006).....................................................................................7, 16

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000).....................................................................12

*In re Bear Stearns Cos.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................................................................12

*In re BHP Billiton Ltd. Sec. Litig.*,
No. 1:16-cv-01445-NRB, 2019 WL 1577313
(S.D.N.Y. Apr. 10, 2019)........................................................................................10

*In re China Media Express Holdings, Inc.*,
No. 11-CV-0804 (VM), 2015 U.S. Dist. LEXIS 181933
(S.D.N.Y. Sept. 18, 2015)........................................................................................10

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales
Practices & Prods. Liab. Litig.*,
No. 17-md-02777-EMC, 2019 U.S. Dist. LEXIS 75205
(N.D. Cal. May 3, 2019) .............................................................................................5

*In re FLAG Telecom Holdings*,
No. 02-CV-3400 (CM) (PED), 2010 WL 4537550
(S.D.N.Y. Nov. 8, 2010) ....................................................................................7, 11

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................4, 13, 15, 16

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-Civ-8557 (CM), 2014 WL 7323417
(S.D.N.Y. Dec. 19, 2014) ........................................................................................12

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000).............................................................................15

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) .....................................................................12, 14

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003).....................................................................19

4837-5422-9144.v3

**Page**

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................2

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
    838 F. Supp. 729 (S.D.N.Y. 1993) .........................................................................4

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ...................................................................18, 19

*In re OCA, Inc. Sec. & Derivative Litig.*,
    No. 05-2165, 2009 WL 512081
    (E.D. La. Mar. 2, 2009) ........................................................................................20

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998) ...................................................................................3

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997),
    *aff'd*, 117 F.3d 721 (2d Cir. 1997) ....................................................6, 12, 14, 15

*In re Sadia S.A. Sec. Litig.*,
    No. 08 Civ. 9528 (SAS), 2011 WL 6825235
    (S.D.N.Y. Dec. 28, 2011) ...............................................................................12, 20

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ...........................................................................7

*In re Tesco PLC Sec. Litig.*,
    No. 14 Civ. 8495 (RMB), slip op.
    (S.D.N.Y. May 26, 2016) .....................................................................................12

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    718 F. Supp. 1099 (S.D.N.Y. 1989) .................................................................3, 15

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115809
    (S.D.N.Y. Nov. 7, 2007) ...............................................................................11, 17

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................................16

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................6, 12, 16, 17

- v -

Page

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
   No. 08 Civ. 5310 (DAB), 2019 U.S. Dist. LEXIS 39807
   (S.D.N.Y. Mar. 8, 2019) ................................................................................6

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972).........................................................................15

*Pelzer v. Vassalle*,
   655 Fed. Appx. 352 (6th Cir. 2016)..............................................................10

*Plummer v. Chem. Bank*,
   668 F.2d 654 (2d Cir. 1982),
   *aff'd sub nom. D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ..........................................................................13

*Snyder v. Ocwen Loan Servicing, LLC*,
   No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926
   (N.D. Ill. May 14, 2019) ................................................................................5

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)...........................................................8

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814 (MP), 2004 WL 1087261
   (S.D.N.Y. May 14, 2004)..............................................................................14

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) .....................................................................4

*Vargas v. Capital One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ....................................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)..................................................................*passim*

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78u-4 ......................................................................................................12, 19
   §78u-4(a)(4) ...................................................................................................1

Page

Federal Rules of Civil Procedure
    Rule 23 ........................................................................................................................18
    Rule 23(a) ...........................................................................................................17, 18
    Rule 23(b)(3) ......................................................................................................17, 18
    Rule 23(c) ....................................................................................................................14
    Rule 23(c)(2)(B) ...............................................................................................18, 20
    Rule 23(e) ..............................................................................................................1, 18
    Rule 23(e)(1) ..............................................................................................................18
    Rule 23(e)(2) ....................................................................................................... *passim*
    Rule 23(e)(2)(A) ..........................................................................................................5
    Rule 23(e)(2)(B) ......................................................................................................5, 6
    Rule 23(e)(2)(C)(i) ...................................................................................................7, 9
    Rule 23(e)(2)(C)(ii) .....................................................................................................9
    Rule 23(e)(2)(C)(iii) ..................................................................................................10
    Rule 23(e)(2)(C)(iv) ..................................................................................................11
    Rule 23(e)(2)(D) ........................................................................................................11
    Rule 23(e)(3) ......................................................................................................3, 11

4837-5422-9144.v3

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Afshin Galestan ("Lead Plaintiff"), on behalf of himself and the Class, respectfully submits this memorandum of law in support of his motion for final approval of the $9,000,000 Settlement (the "Settlement Amount") reached in the above-captioned consolidated securities class action (the "Litigation") and approval of the Plan of Allocation (the "Plan").  The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement, dated as of April 23, 2019, which was previously filed with the Court ("Stipulation" or "Settlement").  ECF No. 36.[1]

## I.    PRELIMINARY STATEMENT

Lead Counsel's $9 million recovery is the product of vigorous efforts in prosecuting the Litigation, together with arm's-length settlement negotiations among experienced and knowledgeable counsel, including a formal mediation session overseen by a nationally-recognized, neutral mediator.  The Settlement is a very good result for the Class and satisfies each of the Rule 23(e)(2) and *Grinnell*[2] factors.  It is particularly beneficial to the Class in light of the many risks Lead Plaintiff faced, including that: (1) the Court would grant Defendants' pending motion for reconsideration of their motion to dismiss; (2) the Court would deny Lead Plaintiff's motion to certify the Class; (3) Defendants would prevail on their motion for summary judgment at the conclusion of discovery; and (4) protracted, expensive, and contested litigation, including trial and likely appeals, could ultimately lead to no recovery, or a far smaller recovery.

Further confirming the fairness of the Settlement is the fact that, to date, Members of the Class have reacted positively to the Settlement.  Pursuant to the Order Preliminarily Approving

---

[1]    All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation and the Declaration of Robert M. Rothman in Support of: (1) Lead Plaintiff's Motion for Final Approval of Settlement and Approval of the Plan of Allocation, and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Rothman Decl."), submitted herewith.

[2]    *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Settlement and Providing for Notice ("Preliminary Approval Order"), dated May 1, 2019 (ECF No. 38), copies of the Notice were sent to over 27,000 potential Class Members and nominees beginning on May 15, 2019, and notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on May 29, 2019.[3]  *See* Mulvihill Decl., ¶¶3-12.  To date, not a single objection to the Settlement has been filed, and no requests for exclusion from the Class have been received.  *Id.*, ¶16.

Finally, Lead Counsel, who has substantial experience prosecuting securities class actions, has concluded that the Settlement is fair, reasonable, and adequate and in the best interests of the Class.  Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and approve the Plan as fair and reasonable.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Lead Plaintiff respectfully refers the Court to the accompanying Rothman Declaration for a detailed discussion of the factual background and procedural history of the Litigation, the extensive efforts undertaken by Lead Plaintiff and his counsel during the course of the Litigation, the risks of continued litigation, and a discussion of the negotiations leading to the Settlement.  Rothman Decl., ¶¶15-75.

## III.   STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.    The Law Favors and Encourages Settlements

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014); *see also In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily

---

[3]     *See* Declaration of Matthew Mulvihill Regarding: (A) Mailing of the Notice and Proof of Claim; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion ("Mulvihill Decl."), submitted herewith.

lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) ("the courts have long recognized that [complex class action] litigation 'is notably difficult and notoriously uncertain,' . . . and that compromise is particularly appropriate") (citation omitted).   Therefore, when exercising discretion to approve a settlement, courts are "mindful of the 'strong judicial policy in favor of settlements.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)).   Thus, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

### B.   The Settlement Must Be Procedurally and Substantively Fair, Adequate, and Reasonable

Rule 23(e)(2), as recently amended, provides that:

(2) *Approval of the Proposal*.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A)   the class representatives and class counsel have adequately represented the class;
> (B)   the proposal was negotiated at arm's length;
> (C)   the relief provided for the class is adequate, taking into account:
>> (i)   the costs, risks, and delay of trial and appeal;
>> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)   any agreement required to be identified under Rule 23(e)(3); and
> (D)   the proposal treats class members equitably relative to each other."

Rule 23(e)(2).

- 3 -

In addition, the Second Circuit considers the following factors (known as the "*Grinnell* factors"), some of which overlap with the Rule 23(e)(2) factors, when determining whether to approve a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *Grinnell*, 495 F.2d at 463).

In finding that a settlement is substantively fair, reasonable, and adequate, not every factor needs to be satisfied, but "rather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)). As such, the court should assess the settlement as presented, without modifying its terms, and without substituting its "'business judgment for that of counsel, absent evidence of fraud or overreaching.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (quoting *In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 838 F. Supp. 729, 737 (S.D.N.Y. 1993)).

Lead Plaintiff respectfully submits that the proposed Settlement satisfies both Rule 23(e)(2) and the *Grinnell* factors and is therefore fair, reasonable, and adequate.

### C.     The Proposed Settlement Is Procedurally and Substantively Fair, Adequate, and Reasonable

#### 1.     The Settlement Satisfies the Requirements of Rule 23(e)(2)

As explained in Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Settlement (at 7-12) ("Preliminary Approval Memorandum") (ECF No. 35),

and as acknowledged by the Preliminary Approval Order, Lead Plaintiff has met all of the requirements imposed by Rule 23(e)(2).  Courts analyzing the recently amended Rule 23(e)(2) factors have noted that a plaintiff's satisfaction of these factors is virtually assured where, as here, little has changed between preliminary approval and final approval.  *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 U.S. Dist. LEXIS 75205, at *29 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926, at *14 (N.D. Ill. May 14, 2019) (noting in analyzing Rule 23(e)(2) that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

### a.   Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

Lead Plaintiff and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Action, including, among other things, investigating the relevant factual events, drafting the operative complaint, responding to Defendants' arguments in favor of dismissal, opposing Defendants' motion for reconsideration, and engaging in a full-day mediation session with the mediator.  Rothman Decl., ¶¶15-17, 37-39, 48-49, 53-57.  Lead Plaintiff and Lead Counsel stood ready to, and at all times did, advocate for the best interests of the Class.  Thus, as with obtaining preliminary approval, Lead Plaintiff satisfies Rule 23(e)(2)(A) for purposes of final approval.

### b.   The Proposed Settlement Was Negotiated at Arm's Length

With respect to Rule 23(e)(2)(B), Lead Plaintiff satisfies this factor because the Settlement is the result of an arm's length negotiation in which there is no hint of collusion.  Lead Plaintiff filed a

- 5 -

detailed amended complaint and opposed Defendants' vigorous attempt to dismiss this Litigation and to obtain reconsideration of the denial of that motion. Rothman Decl., ¶¶20, 37-49. At no point did Defendants concede that a single aspect of Lead Plaintiff's claims was meritorious. *Id.*, ¶¶38, 42-46. In addition, the parties, OneMain, and the Company's insurance carriers negotiated the Settlement under the supervision of an experienced mediator. *Id.*, ¶¶53-57. The mediation process provides compelling evidence that the Settlement is not the product of collusion between the parties. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, No. 08 Civ. 5310 (DAB), 2019 U.S. Dist. LEXIS 39807, at \*6, \*13-\*14 (S.D.N.Y. Mar. 8, 2019) (the parties' participation in mediation is evidence of arm's-length negotiations); *Dover v. British Airways, PLC*, No. 12 CV 5567 (RJD) (CLP), 2018 U.S. Dist. LEXIS 174513, at \*10-\*11 (E.D.N.Y. Oct. 9, 2018) (same). In fact, when the parties could not reach a compromise, the mediator proposed a settlement that was ultimately accepted by all parties. Thus, Lead Plaintiff has again established that the Settlement was negotiated at arm's length. *Id.*, ¶¶53-57.

In the Second Circuit, a strong presumption of fairness attaches to a class action settlement reached through arm's-length negotiations among able and experienced counsel. *See Wal-Mart*, 396 F.3d at 116; *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) ("'great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation'") (citation omitted).

Accordingly, the Settlement should be entitled to the presumption of procedural fairness under Second Circuit law, and be found to satisfy Rule 23(e)(2)(B).

      **c.**      **The Proposed Settlement Is Adequate in Light of the**
                **Costs, Risks, and Delays of Trial and Appeal**

Rule 23(e)(2)(C)(i) and the first, fourth and fifth *Grinnell* factors concern the substantive

adequacy of the Settlement.  Rule 23(e)(2)(C)(i) advises district courts to consider "the costs, risks

and delay of trial and appeal," while the relevant *Grinnell* factors overlap and address the risks of

establishing liability and damages.

           **(1)**      **The Risks of Establishing Liability at Trial**

Securities class actions present numerous hurdles for plaintiffs to meet and these risks weigh

in favor of final settlement approval.  Indeed, courts in this district "'have long recognized that

[securities] litigation is notably difficult and notoriously uncertain.'"  *In re FLAG Telecom Holdings*,

No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (quoting *In re*

*Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)); *see also In re AOL Time Warner,*

*Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006)

("The difficulty of establishing liability is a common risk of securities litigation.").  Although Lead

Plaintiff and Lead Counsel believe that the claims asserted in the Action are meritorious, continued

litigation against Defendants posed substantial risks that made any recovery uncertain.  *Id.*, ¶¶63-75.

For example, to prove his case at trial, Lead Plaintiff would need to rely extensively on

several expert witnesses for analysis of key issues.  Each expert's testimony would be critical to

demonstrating the validity of Lead Plaintiff's claims to the jury, as well as loss causation and

damages, and the conclusions of each expert would be hotly contested at trial.  Thus, Lead Plaintiff's

case was particularly susceptible to a danger inherent in reliance on expert witness testimony,

including that the experts will be subject to a *Daubert* challenge.  If, for some reason, the Court

determined that even one of Lead Plaintiff's experts should be excluded from testifying at trial, Lead

Plaintiff's case would become much more difficult to prove.

- 7 -

While Lead Plaintiff believes his claims would be borne out by the evidence, OneMain has articulated certain defenses that the Court may have accepted at summary judgment or a jury may have accepted at trial.  For instance, OneMain has strenuously contended that Lead Plaintiff would be unable to prove that Defendants made any false statements with scienter.  Rothman Decl., ¶¶65-66.  Indeed, OneMain maintains that it accurately disclosed all material information about the integration.  *Id.*, ¶66.  OneMain also maintains that it lacked scienter because its senior executives did not receive the undisclosed information, which contradicted the alleged misstatements, and that it had been disclosing certain granular metrics, including the information Lead Plaintiff claims was being withheld from the market.  *Id.*, ¶¶66-68.  If Defendants prevailed on any one of these grounds, the Class would recover nothing, let alone the certainty of the $9 million Settlement.

**(2)      The Risks of Establishing Damages at Trial**

Lead Plaintiff also faced risks in establishing loss causation and damages at trial.  OneMain would have argued and presented expert opinions that Lead Plaintiff's damages methodology is inherently unreliable and does not account for disaggregation.  Rothman Decl., ¶¶69-72.  Defendants further would have argued that damages, if any, are zero or, at best, significantly less than Lead Plaintiff had estimated.  *Id.*, ¶71.  As with contested liability issues, issues relating to loss causation and damages would have likely come down to an unpredictable and hotly disputed "battle of the experts." *Id.*, ¶64.

**(3)      The Settlement Eliminates the Additional Costs
and Delay of Continued Litigation**

The anticipated complexity, cost, and duration of the Litigation would be considerable.  *See Advanced Battery*, 298 F.R.D. at 175 ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement"); *see also Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to

- 8 -

assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

If not for this Settlement, the Litigation would have continued to be vigorously contested. The parties would brief motions for class certification and summary judgment as well as prepare for a likely multi-week trial.  Post-trial motions and appeals could last for years.  A prolonged period of pretrial proceedings and a lengthy and uncertain trial and appeals process would not serve the interests of the Class compared to the immediate monetary benefits of the Settlement.

Accordingly, the Rule 23(e)(2)(C)(i) factor and the first, fourth and fifth *Grinnell* factors weigh in favor of final approval of the Settlement.

### d. The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Lead Plaintiff and Lead Counsel have taken steps to ensure that the Class is amply notified about the Settlement.  Pursuant to the Preliminary Approval Order, more than 27,000 copies of the Notice and Proof of Claim were mailed to potential Class Members and nominees, and the Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on May 29, 2019.  Mulvihill Decl., ¶¶3-12.  Class Members have until July 19, 2019 to object to the Settlement or request exclusion from the Class.  While that date has not yet passed, to date, there have been no objections to the Settlement, and no requests for exclusion have been received.  *Id.*, ¶16.  In addition, the claims process is similar to that commonly used in securities class action settlements, and it provides for straightforward cash payments based

on the trading information provided.  Thus, this factor supports final approval for the same reason that it supported preliminary approval.

### e.        Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  Consistent with the Notice, and as discussed in Lead Counsel's fee brief, Lead Counsel seeks an award of attorneys' fees in the amount of 30% of the Settlement Amount and expenses in an amount of $46,706.65, plus interest on both amounts, plus an award to Lead Plaintiff of $3,500.00.  As explained in Lead Counsel's fee brief, this request is in line with recent fee awards in this District, including from this Court.  *See, e.g.*, *In re BHP Billiton Ltd. Sec. Litig.*, No. 1:16-cv-01445-NRB, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding 30% of $50 million recovery); *In re China Media Express Holdings, Inc.*, No. 11-CV-0804 (VM), 2015 U.S. Dist. LEXIS 181933, at *6 (S.D.N.Y. Sept. 18, 2015) (Marrero, J.) (awarding fees of 33.33% of $12 million recovery, plus expenses); *Gormley v. Magicjack Vocaltec Ltd.*, No. 1:16-cv-01869-VM, slip op. at 1 (S.D.N.Y. Jan. 19, 2018) (Marrero, J.) (awarding fees of 33% of $3.65 million recovery, plus expenses) (attached hereto as Ex. A).

The Notice further explains that any attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel when the Court executes the Judgment and Order awarding such fees and expenses.  Mulvihill Decl., Ex. A at 11; *see also Pelzer v. Vassalle*, 655 Fed. Appx. 352, 365 (6th Cir. 2016) (approving "[t]he quick-pay provision" and finding that it "does not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid").  Thus, Lead Plaintiff ensured that the Class was fully apprised of the terms of the proposed award of attorneys' fees, including the timing of such payments, which merits a finding that this factor supports the Settlement.

- 10 -

4837-5422-9144.v3

**f.**     **The Parties Have No Other Agreements Besides Opt-Outs**

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement required to be disclosed under Rule 23(e)(3).  As disclosed in moving for preliminary approval, the parties have entered into a standard supplemental agreement which provides that in the event Class Members with a certain aggregate amount of Recognized Claims opt out of the Settlement, OneMain shall have the option to terminate the Stipulation.[4]

**g.**     **Class Members Are Treated Equitably**

The final factor, Rule 23(e)(2)(D), looks at whether Class Members are treated equitably. The Settlement is designed to do precisely that.  As discussed *infra* at §IV, the Plan treats Class Members equitably relative to each other, based on the timing of their OneMain common stock purchases, acquisitions and sales, and by providing that each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund based on their recognized losses.  For this reason, this factor merits granting final approval of the Settlement.

*          *          *

Thus, Lead Plaintiff and Lead Counsel respectfully submit that each factor identified under Rule 23(e)(2) supports granting final approval of the Settlement.

**2.**     **The Settlement Satisfies the Remaining *Grinnell* Factors**

**a.**     **The Lack of Objections to Date Supports Final Approval of the Settlement**

The reaction of the Class to the Settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'"  *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007) (citation omitted); *see also FLAG*

---

[4]     Upon request, Lead Plaintiff will provide a copy of the supplemental agreement to the Court for *in camera* review.

- 11 -

*Telecom*, 2010 WL 4537550, at *16.  In fact, the "'absence of objections may itself be taken as evidencing the fairness of a settlement.'"  *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (citing *PaineWebber*, 171 F.R.D. at 126).  *See also In re Tesco PLC Sec. Litig.*, No. 14 Civ. 8495 (RMB), slip op. at 10 (S.D.N.Y. May 26, 2016) ("[T]he 'reaction of the class to the settlement' – favors approval of the Settlement insofar as no Class member objected to the Settlement.") (attached hereto as Ex. B).

While the deadline to submit objections and exclusions is July 19, 2019, to date no objections or opt outs have been received.  Rothman Decl., ¶14.  The positive reaction of the Class supports approval of the Settlement.  *See In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *1 (S.D.N.Y. Dec. 28, 2011).

      **b.**      **Lead Plaintiff Has Sufficient Information to Make an Informed Decision as to the Settlement**

In considering the third *Grinnell* factor, "'the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'"  *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) (quoting *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012)).  "To satisfy this factor, parties need not have even engaged in formal or extensive discovery."  *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014) (noting that discovery cannot commence in cases brought under the PSLRA until the motion to dismiss is denied); *Maley*, 186 F. Supp. 2d at 363; *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) ("[T]he Court need not find that the parties have engaged in extensive discovery.  Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the

- 12 -

Settlement.") (quoting *Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir. 1982)), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Global Crossing*, 225 F.R.D. at 458 ("[T]he question is whether the parties had adequate information about their claims.").

In this case, Lead Plaintiff had sufficient information to make an informed decision on the propriety of the Settlement.  As detailed in the Rothman Declaration, Lead Plaintiff and his counsel were able to negotiate the Settlement after conducting an extensive factual investigation and analysis relating to the events and transactions beginning with the initial complaint, including the review of OneMain's SEC filings, news reports, and other publicly available information regarding Defendants.   Rothman Decl., ¶16.   In addition, Lead Counsel conducted numerous witness interviews, including the 11 witnesses detailed in the Complaint.  *Id.*, ¶17.  Lead Counsel also retained a consultant on the issue of damages.  *Id.*, ¶59.  Lead Counsel's thorough investigation continued with the drafting of the detailed Complaint, opposing Defendants' motion to dismiss by letter, opposing Defendants' motion for reconsideration by letter, and participating in an in-person mediation with Defendants' counsel overseen by the Mediator. *Id.*, ¶¶16-17, 20, 37-40, 48-49, 53-57.

As noted above, Lead Counsel prepared a detailed mediation statement that was provided to the Mediator and Defendants' counsel prior to the March 20, 2019 mediation session, and held discussions with Defendants' counsel during the mediation where Defendants' counsel not only pressed the arguments raised in their motion to dismiss but also identified arguments Defendants likely would make if the case were to progress.

Accordingly, Lead Plaintiff and his counsel "have developed a comprehensive understanding of the key legal and factual issues in the litigation and, at the time the Settlement was reached, had 'a clear view of the strengths and weaknesses of their case' and of the range of possible outcomes at

- 13 -

trial." *City of Providence*, 2014 WL 1883494, at *7 (citing *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004)).

> ### c.  Maintaining Class Action Status Through Trial Presents a Substantial Risk

While Lead Plaintiff believed he would prevail on a motion to certify the Class, Defendants were poised to vigorously oppose this motion, giving rise to the risk that the Class would not be certified. Even if the Court granted the motion, Defendants may have moved to decertify the Class or to shorten the Class Period before trial or on appeal, as class certification may be reviewed at any stage of the litigation. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."); Fed. R. Civ. P. 23(c) (authorizing a court to decertify a class at any time). In fact, the length of the Class Period was, and would continue to be, vigorously litigated by the parties in the context of Defendants' reconsideration motion, as discussed above. Rothman Decl., ¶70. The presence of this risk and the uncertainty surrounding it, therefore, weighs in favor of final approval of the Settlement.

> ### d.  Defendants' Ability to Withstand a Greater Judgment

Courts generally do not find the ability of a defendant to withstand a greater judgment to be a barrier to settlement when the other factors favor the settlement. "[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." *PaineWebber*, 171 F.R.D. at 129; *see also IMAX*, 283 F.R.D. at 191 ("'[A] defendant is not required to "empty its coffers" before a settlement can be found adequate.'") (citations omitted). Nevertheless, a potential source of recovery from Defendants (their liability insurance policy) was diminishing through the course of the Litigation.

- 14 -

**e.      The Settlement Amount Is Reasonable in View of the
Best Possible Recovery and the Risks of Litigation**

The adequacy of the amount offered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *see also Wal-Mart*, 396 F.3d at 119.  A court need only determine whether the settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130 (citation omitted).  The "range of reasonableness" has been described by the Second Circuit as a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, the $9 million Settlement is a substantial result for the Class.  As explained in Lead Plaintiff's Preliminary Approval Memorandum (at 15-16) (ECF No. 35), the Settlement represents approximately 9.7% of estimated recoverable damages based on the Plan, and as much as 13% to 18% of reasonably recoverable damages of approximately $69.8 million and $49.1 million, respectively, if the Court were to credit Defendants' damages arguments.  This is a very good result. *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approving settlement amounting to 5.2% of damages for common stock holders); *see also Union Carbide*, 718 F. Supp. at 1103 ("The Court of Appeals has held that a settlement can be approved even though the benefits amount to a small percentage of the recovery sought. . . .   The essence of settlement is compromise."); *Global Crossing*, 225 F.R.D. at 461 ("'The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'") (quoting *Grinnell*, 495 F.2d at 455).

- 15 -

Finally, the Settlement offers the opportunity to provide immediate relief to the Class, rather than a speculative payment years down the road. *See AOL Time Warner*, 2006 WL 903236, at *13 (where the settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"). In light of the complex legal and factual issues present here, the fairness of the Settlement is apparent. *See, e.g.*, *Maley*, 186 F. Supp. 2d at 366-67.

Accordingly, Lead Plaintiff respectfully submits that the immediate cash benefit is well "within the range of reasonableness" in light of the best possible recovery and all the risks of litigation.

## IV.     THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

The standard for approval of the Plan is the same as the standard for approving the Settlement as a whole. Specifically, "'it must be fair and adequate.'" *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (quoting *Maley*, 186 F. Supp. 2d at 367). "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775, 2015 WL 5918273, at *4 (E.D.N.Y. Oct. 9, 2015) (citation omitted). "'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'" *Advanced Battery*, 298 F.R.D. at 180 (quoting *Global Crossing*, 225 F.R.D. at 462; *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001)).

The Plan, which is set forth in the Notice, was prepared with the assistance of Lead Plaintiff's damages consultant and is based on the same methodology underlying Lead Plaintiff's damages – the amount of artificial inflation in the price of OneMain common stock during the Class

- 16 -

Period.  It is a fair method to apportion the Net Settlement Fund among Authorized Claimants based on, and consistent with, the claims alleged.  *See* Rothman Decl., ¶77.

The Net Settlement Fund will be distributed to Authorized Claimants, *i.e.*, Members of the Class who submit timely and valid Proofs of Claim and Release that are approved for payment from the Net Settlement Fund pursuant to the Plan.  The Plan treats all Class Members in a similar manner: everyone who submits a valid and timely Proof of Claim and Release form, and does not exclude himself, herself, or itself from the Class, will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants, so long as such Authorized Claimant's payment amount is $10.00 or more.

Lead Counsel believes that the Plan is fair and reasonable and respectfully submits that it should be approved by the Court.  Notably, there have been no objections to the Plan to date, which also supports the Court's approval.  *See Veeco*, 2007 WL 4115809, at *7; *Maley*, 186 F. Supp. 2d at 367.

## V.    THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In presenting the Settlement to the Court for preliminary approval, Lead Plaintiff requested that the Court certify the Class for settlement purposes only so that notice of the Settlement, the Settlement Hearing and the rights of Class Members to object to the Settlement, request exclusion from the Class or submit Proof of Claim and Release forms, could be issued.  In the Preliminary Approval Order, the Court addressed the requirements for class certification set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and found that Lead Plaintiff had met the requirements for certification of the Class for purposes of settlement.  By its Preliminary Approval Order, the Court preliminarily certified the following Class:

- 17 -

> All persons and entities who purchased or otherwise acquired OneMain common shares from February 25, 2016 to November 7, 2016, inclusive. Excluded from the Class are: Defendants, the officers and directors of One Main at all relevant times, members of their immediate families, any entity in which any Defendant has a controlling interest, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the Class are those Persons who timely and validly request exclusion from the Class pursuant to the requirements described below and in the Notice of Pendency and Proposed Settlement of Class Action ("Notice") to be sent to Class Members pursuant to this Order.

*See* ECF No. 38, ¶¶2-3. In addition, the Court preliminarily certified Lead Plaintiff as class representative and Lead Counsel as class counsel. *Id.*, ¶5.

Since entry of the Preliminary Approval Order, nothing has changed to alter the propriety of the Court's preliminary certification of the Class and, for all the reasons stated in Lead Plaintiff's motion for preliminary approval, incorporated herein by reference, Lead Plaintiff respectfully requests that the Court affirm its preliminary certification and finally certify the Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and appoint Lead Plaintiff as class representative and Lead Counsel as class counsel.

## VI.    NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Additionally, notice of a settlement must be directed to class members in a "reasonable manner." Fed. R. Civ. P. 23(e)(1). Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "'members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114 (citations omitted); *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014). "Notice need not be perfect" or received by every class member, but instead be reasonable under the circumstances. *In*

*re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008).  Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder."  *Id.* (citing *Wal-Mart*, 396 F.3d at 114).

The Notice and the method utilized to disseminate it to potential Class Members satisfies these standards.  The Court-approved Notice and Proof of Claim and Release (the "Notice Packet") amply apprise Class Members of, *inter alia*: (1) the pendency of the Litigation; (2) the nature of the Litigation and the Class' claims; (3) the essential terms of the Settlement; (4) the proposed Plan; (5) Class Members' rights to request exclusion from the Class or object to the Settlement, the Plan, or the requested attorneys' fees or expenses; (6) the binding effect of a judgment on Class Members; and (7) information regarding Lead Counsel's motion for an award of attorneys' fees and expenses. *See* Mulvihill Decl., Ex. A.  The Notice also provides specific information regarding the date, time, and place of the Settlement Hearing, and sets forth the procedures and deadlines for: (1) submitting a Proof of Claim and Release; (2) requesting exclusion from the Class; and (3) objecting to any aspect of the Settlement, including the proposed Plan and the request for attorneys' fees and expenses.

The Notice also contains the information required by the PSLRA, including: (1) a statement of the amount to be distributed, determined in the aggregate and on an average per share basis; (2) a statement of the potential outcome of the case (*i.e.*, whether there was agreement or disagreement on the amount of damages); (3) a statement indicating the attorneys' fees and costs sought; (4) identification and contact information of counsel; and (5) a brief statement explaining the reasons why the parties are proposing the Settlement.  *See id.*; *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184 (S.D.N.Y. 2003).

In accordance with the Preliminary Approval Order, Epiq Class Action and Claims Solutions ("Epiq") commenced the mailing of the Notice Packet by First-Class Mail to potential Class

- 19 -

Members, brokers, and nominees on May 15, 2019.  Mulvihill Decl., ¶¶6-7.  As of July 2, 2019, more than 27,000 copies of the Notice Packet have been mailed.  *Id.*, ¶10.  Epiq also published the Summary Notice in *The Wall Street Journal* and transmitted it over the *PR Newswire* on May 29, 2019.  *Id.*, ¶12.  Additionally, Epiq posted the Notice Packet, as well as other important documents, on the website maintained for the Settlement.  *Id.*, ¶15.[5]

This combination of individual First-Class Mail to all Class Members who could be identified with reasonable effort, supplemented by mailed notice to brokers and nominees and publication of the Summary Notice in a relevant, widely-circulated publication and internet newswire, was "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  This method of providing notice has been repeatedly approved for use in securities class actions and other comparable class actions.  *See, e.g.*, *Sadia*, 2011 WL 6825235, at *1; *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at *7-*9 (E.D. La. Mar. 2, 2009) (mailing, internet publication, and newspaper publication satisfied due process notice requirements).

## VII.   CONCLUSION

The Settlement obtained represents a substantial recovery for the Class.  For the foregoing reasons, Lead Plaintiff respectfully requests that this Court enter the proposed Final Judgment and

---

[5]    The Notice and Summary Notice reference the Internet website for the Settlement.  *See* Mulvihill Decl., Exs. A and C.

Order of Dismissal with Prejudice, approving the Settlement.  Lead Plaintiff also requests that the

Court enter an order approving the Plan, which will govern distribution of the Settlement proceeds.

DATED:  July 3, 2019                     Respectfully submitted,

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         SAMUEL H. RUDMAN
                                         ROBERT M. ROTHMAN
                                         MICHAEL G. CAPECI


                                         _____
                                                s/Robert M. Rothman
                                             ROBERT M. ROTHMAN

                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)
                                         srudman@rgrdlaw.com
                                         rrothman@rgrdlaw.com
                                         mcapeci@rgrdlaw.com

                                         HOLZER & HOLZER, LLC
                                         COREY D. HOLZER (*pro hac vice*)
                                         MARSHALL P. DEES (*pro hac vice*)
                                         1200 Ashwood Parkway, Suite 410
                                         Atlanta, GA  30338
                                         Telephone:  770/392-0090
                                         770/392-0029 (fax)
                                         cholzer@holzerlaw.com
                                         mdees@holzerlaw.com

                                         Lead Counsel for Plaintiff

4837-5422-9144.v3

<u>CERTIFICATE OF SERVICE</u>

I, Robert M. Rothman, hereby certify that on July 3, 2019, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

/s/ Robert M. Rothman
ROBERT M. ROTHMAN