UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
AFSHIN GALESTAN, Individually and on    :
Behalf of All Others Similarly Situated,     :
                                       :
                     Plaintiff,    :
                                       :
     vs.                                   :
                                       :
ONEMAIN HOLDINGS, INC., JAY N.    :
LEVINE and SCOTT T. PARKER,       :
                                       :
                  Defendants.    :
                                       :
———————————————————— x

Civil Action No. 1:17-cv-01016-VM

<u>CLASS ACTION</u>

MEMORANDUM OF LAW IN SUPPORT
OF LEAD COUNSEL'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND
EXPENSES AND AWARD TO LEAD
PLAINTIFF PURSUANT TO 15 U.S.C.
§78u-4(a)(4)

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ..................................................................................................1

II. HISTORY AND BACKGROUND OF THE LITIGATION...............................................3

III. ARGUMENT .....................................................................................................3

  A.  Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund.................................................................................3

  B.  The Court Should Award a Reasonable Percentage of the Common Fund............5

  C.  The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method...........................................................................................7

  D.  The Fee Request Is Reasonable Under the Lodestar Method .................................9

  E.  The Relevant Factors Confirm that the Requested Fee Is Reasonable .................11

     1.  The Time and Labor Expended by Counsel ...............................................12

     2.  The Risks of the Litigation ........................................................................13

        a.  The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee ..........................................................13

        b.  Risks of Establishing Liability......................................................15

        c.  Risk of Establishing Causation and Damages ..............................16

     3.  The Magnitude and Complexity of the Litigation .....................................16

     4.  The Quality of Representation Supports the Requested Fee .....................17

     5.  Public Policy Considerations.....................................................................18

     6.  The Class' Reaction to the Fee Request to Date Supports the Requested Fee ............................................................................................19

IV. LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION.................................19

V.  LEAD PLAINTIFF SHOULD BE AWARDED HIS REASONABLE TIME AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4).................................................20

VI. CONCLUSION.................................................................................................22

- i -

# TABLE OF AUTHORITIES

Page

## CASES

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) .................................................................15

*Anwar v. Fairfield Greenwich Ltd.*,
  No. 1:09-cv-00118 (VM), slip op.
  (S.D.N.Y. May 6, 2016) .........................................................................8

*Aponte v. Comprehensive Health Mgmt.*,
  No. 10 Civ. 4825 (JLC), 2013 WL 1364147
  (S.D.N.Y. Apr. 2, 2013).........................................................................13

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)................................................................................4

*Bd. of Trs. of the Operating Eng'rs Pension Tr. v. JPMorgan Chase Bank, N.A.*,
  No. 09-cv-09333-KBF, slip op.
  (S.D.N.Y. Nov. 20, 2013) .......................................................................8

*Blum v. Stenson*,
  465 U.S. 886 (1984)............................................................................6, 8

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)................................................................................3

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988) .................................................................6

*Chatelain v. Prudential-Bache Sec.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) .........................................................16

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
  No. 1:08-cv-03612-RJS, slip op.
  (S.D.N.Y. Apr. 5, 2013).........................................................................8

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
  No. 1:12-cv-01203-VEC, 2015 WL 13639234
  (S.D.N.Y. Oct. 15, 2015) ...................................................................8, 21

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132 (CM), 2014 WL 1883494
  (S.D.N.Y. May 9, 2014),
  *aff'd sub nom. Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) ...................................................4, 6, 9, 17

- ii -

Page

*Cornwell v. Credit Suisse Grp.*,
No. 08-cv-03758(VM), slip op.
(S.D.N.Y. July 20, 2011) ................................................................................8, 10

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ...............................................................5, 11

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)..................................................................................13

*Faught v. Am. Home Shield Corp.*,
668 F.3d 1233 (11th Cir. 2011) ...............................................................................6

*Fresno Cty. Emps. Ret. Ass'n v. Isaacson*,
925 F.3d 63 (2d Cir. 2019).....................................................................................6, 7

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)............................................................................ *passim*

*Gormley v. Magicjack Vocaltec Ltd.*,
No. 16-cv-01869-VM, slip op.
(S.D.N.Y. Jan. 19, 2018)......................................................................................8, 21

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) ...................................................................................6

*Hayes v. Harmony Gold Mining Co.*,
509 F. App'x 21 (2d Cir. 2013) ...............................................................................5

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071 (RJH), 2005 WL 2757792
(S.D.N.Y. Oct. 24, 2005) ......................................................................................5, 21

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ...............................................................................15

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................................................................7, 13

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
No. 04 Civ. 8141 (DAB), 2010 WL 5060697
(S.D.N.Y. Dec. 2, 2010)...........................................................................................21

- iii -

**Page**

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  No. MDL 1500, 2006 WL 903236
  (S.D.N.Y. Apr. 6, 2006) ........................................................................16

*In re AremisSoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002) ..............................................................11

*In re Bayer AG Sec. Litig.*,
  No. 03 Civ. 1546 (WHP), 2008 WL 5336691
  (S.D.N.Y. Dec. 15, 2008) .......................................................................16

*In re BHP Billiton Sec. Litig.*,
  No. 1:16-cv-01445-NRB, 2019 WL 1577313
  (S.D.N.Y. Apr. 10, 2019) ....................................................................8, 10

*In re BISYS Sec. Litig.*,
  No. 04 Civ. 3840 (JSR), 2007 WL 2049726
  (S.D.N.Y. July 16, 2007) ..................................................................11, 17

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ....................................................................2

*In re China Media Express Holdings, Inc.*,
  No. 11-CV-0804 (VM), 2015 U.S. Dist. LEXIS 181933
  (S.D.N.Y. Sept. 18, 2015) ........................................................................8

*In re China Sunergy Sec. Litig.*,
  No. 07 Civ. 7895 (DAB), 2011 WL 1899715
  (S.D.N.Y. May 13, 2011) .......................................................................20

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354
  (E.D.N.Y. June 24, 2010) ..................................................................10, 13

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ................................................................13

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 (CM) (PED), 2010 WL 4537550
  (S.D.N.Y. Nov. 8, 2010) ............................................................... *passim*

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................7, 20

4841-9056-6041.v3

**Page**

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).................................................................................6

*In re Ikon Sols., Inc.*,
    194 F.R.D. 166 (E.D. Pa. 2000).........................................................................16

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003)...............................................................20

*In re Interpublic Sec. Litig.*,
    No. 02 Civ. 6527 (DLC), 2004 WL 2397190
    (S.D.N.Y. Oct. 26, 2004) ....................................................................................4

*In re Ivan F. Boesky Sec. Litig.*,
    888 F. Supp. 551 (S.D.N.Y. 1995) .....................................................................9

*In re JDS Uniphase Corp. Sec. Litig.*,
    No. C-02-1486 CW (EDL), 2007 WL 4788556
    (N.D. Cal. Nov. 27, 2007)..................................................................................15

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................15, 18

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 WL 313474
    (S.D.N.Y. Feb. 1, 2007) .....................................................................................10

*In re Nortel Networks Corp. Sec. Litig.*,
    539 F.3d 129 (2d Cir. 2008)................................................................................2

*In re Oracle Corp. Sec. Litig.*,
    No. C 01-00988-SI, 2009 WL 1709050
    (N.D. Cal. June 19, 2009),
    *aff'd*, 627 F.3d 376 (9th Cir. 2010)..................................................................15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ................................................................5

*In re Prudential Sec. Ltd. P'ships Litig.*,
    985 F. Supp. 410 (S.D.N.Y. 1997) ...................................................................13

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005)..............................................................................19

- v -

**Page**

*In re Sadia S.A. Sec. Litig.*,
   No. 08 Civ. 9528 (SAS), 2011 WL 6825235
   (S.D.N.Y. Dec. 28, 2011) .......................................................................................................14

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..............................................................................4, 11, 13

*In re Thirteen Appeals Arising out of the San Juan Dupont
   Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995) ....................................................................................................6

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115808
   (S.D.N.Y. Nov. 7, 2007) ..............................................................................................4, 7, 18, 22

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd*, 798 F.2d 35 (2d Cir. 1986) ..........................................................................................9

*J. I. Case Co. v. Borak*,
   377 U.S. 426 (1964) ..............................................................................................................4

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ...................................................................................................6

*Landmen Partners Inc. v. Blackstone Grp. L.P.*,
   No. 08-CV-03601-HB-FM, 2013 WL 11330936
   (S.D.N.Y. Dec. 18, 2013) ......................................................................................................8

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..............................................................................7, 11, 18

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ...........................................................................................................7, 10

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
   No. 1:08-cv-10783-LAP, 2016 WL 3369534
   (S.D.N.Y. May 2, 2016) .........................................................................................................11

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ................................................................................................6

*Rawlings v. Prudential-Bache Props.*,
   9 F.3d 513 (6th Cir. 1993) ......................................................................................................6

**Page**

*Robbins v. Koger Props.*,
116 F.3d 1441 (11th Cir. 1997) ...................................................................15

*Savoie v. Merchs. Bank*,
166 F.3d 456 (2d Cir. 1999)....................................................................3, 6

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993) .....................................................................6

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
No. 01-CV-11814 (MP), 2004 WL 1087261
(S.D.N.Y. May 14, 2004)...................................................................13, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).....................................................................................4

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ......................................................................6

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
396 F.3d 96 (2d Cir. 2005)...............................................................5, 6, 10

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
No. 14-CV-8925 (KMW), 2017 WL 3579892
(S.D.N.Y. Aug. 18, 2017) ...................................................................10, 18

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78u-4 ............................................................................................. *passim*
§78u-4(a)(4) ...............................................................................1, 2, 20, 21
§78u-4(a)(6) .................................................................................................7

## SECONDARY AUTHORITIES

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
*Federal Practice and Procedure* (3d ed. 2005)
§1803......................................................................................................4

Lead Counsel submits this memorandum in support of its motion for an award of attorneys' fees and expenses and an award to lead plaintiff Afshin Galestan ("Lead Plaintiff") pursuant to 15 U.S.C. §78u-4(a)(4) in connection with his representation of the Class.

## I.     INTRODUCTION

After more than two years of hard-fought litigation, Lead Counsel has secured a $9,000,000 settlement for the benefit of the Class – a very good result, achieved in spite of serious obstacles to recovery, including the numerous defenses to liability and damages that OneMain has articulated and that the Court may have accepted at summary judgment or a jury may have accepted at trial.[1]  To obtain this Settlement, Lead Plaintiff and Lead Counsel overcame a number of significant challenges that existed from the filing of the initial complaint.  In recognition of these risks and the result obtained, Lead Counsel now respectfully moves this Court for an award of attorneys' fees of 30% of the Settlement Amount, and $46,706.65 in expenses that were reasonably and necessarily incurred in prosecuting and resolving the Litigation, plus interest on both amounts.  In addition, Lead Plaintiff seeks an award in the amount of $3,500.00 for the time he spent representing the Class pursuant to 15 U.S.C. §78u-4(a)(4).  As set forth below, the relevant factors articulated in the Second Circuit's *Goldberger* decision strongly support the requested awards.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

This fee request also has the full support of Lead Plaintiff.  *See* Declaration of Afshin Galestan in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Approval of the

---

[1]     Capitalized terms used herein are defined and have the meanings contained in the Stipulation and Agreement of Settlement (ECF No. 36) (the "Stipulation"), the accompanying Declaration of Robert M. Rothman in Support of: (1) Lead Plaintiff's Motion for Final Approval of Settlement and Approval of the Plan of Allocation, and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Rothman Decl."), and in the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Approval of the Plan of Allocation ("Settlement Memorandum"), submitted concurrently herewith.

- 1 -

Plan of Allocation and for Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Galestan Decl."), ¶6, filed herewith.  This is significant as the Second Circuit has directed district courts to:

> give serious consideration to negotiated fees because PSLRA lead plaintiffs often have a significant financial stake in the settlement, providing a powerful incentive to ensure that any fees resulting from that settlement are reasonable.  ***In many cases***, the agreed-upon fee will offer the best indication of a market rate, thus providing a good starting position for a district court's fee analysis.

*In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133-34 (2d Cir. 2008) (emphasis added); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001) ("courts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly-selected lead plaintiff and properly-selected lead counsel").  In addition, following an extensive Court-ordered notice program in which 27,083 Notices have been mailed to potential Class Members, to date not a single Class Member has objected to the requested fees or the expenses (not to exceed $100,000 as set forth in the Notice).[2]

      As detailed here, in the Rothman Declaration, and in the Settlement Memorandum, the Settlement achieved here represents a very good result for Lead Plaintiff and the Class, particularly when judged in the context of the significant litigation risks attendant in this Action.  The $9 million Settlement that Lead Counsel obtained provides the Class with an immediate and certain recovery in a case that faced substantial obstacles in light of Defendants' various defenses.  In achieving this

---

[2]      As of the date of this fee memorandum, which is before the July 19, 2019 deadline for filing objections, Lead Counsel has not received any objections to the fee and expense request.  Pursuant to the Court's Preliminary Approval Order, more than 27,000 copies of the Notice were mailed to potential Members of the Class and nominees, advising them that Lead Counsel intended to apply to the Court for an award of attorneys' fees not to exceed 30% of the Settlement Amount, plus expenses of no greater than $100,000, plus interest on both amounts, and plus an award to Lead Plaintiff of no greater than $5,000.  *See* accompanying Declaration of Matthew Mulvihill Regarding: (A) Mailing of the Notice and Proof of Claim; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion ("Mulvihill Decl.").  If any timely objections are received from Class Members, Lead Counsel will address them in its reply brief, which will be filed with the Court no later than August 2, 2019.

result, Lead Counsel worked more than 2,100 hours over the course of two years on this complex litigation, all on a contingency basis, with no guarantee of ever being paid.

Lead Counsel believes that an attorney fee award of 30%, together with payment of its litigation expenses, properly reflects the many significant risks taken by Lead Counsel in initiating and prosecuting the Action, as well as the result achieved in a hard-fought and difficult litigation. When examined under either of this Circuit's methods of contingency fee determination (*i.e.*, percentage of the fund or lodestar), it is abundantly clear that an award of fees of 30% is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases. In addition, the costs and expenses requested by Lead Counsel are reasonable in amount and were necessarily incurred. Finally, Lead Plaintiff greatly contributed to the prosecution and settlement of the Litigation, and the Court should grant the request to award $3,500 to Lead Plaintiff for his efforts.

## II.    HISTORY AND BACKGROUND OF THE LITIGATION

A detailed description of Lead Plaintiff's claims and Lead Counsel's prosecution of this case (including key pleadings, discovery efforts, motions, and mediation efforts) is set forth in the accompanying Rothman Declaration. For the sake of brevity, the Court is respectfully referred to that declaration.

## III.   ARGUMENT

### A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger*, 209 F.3d at 47; *Savoie v. Merchs. Bank*, 166 F.3d 456, 459-60 (2d Cir. 1999). "The

- 3 -

court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1803, at 325 (3d ed. 2005). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *See Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *10-*11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *Veeco*, 2007 WL 4115808, at *2. Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

Courts in this Circuit have consistently adhered to this precedent. *See In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable

- 4 -

fee – set by the court – to be taken from the fund.'") (citation omitted).  Fairly compensating Lead

Counsel for the risks it took in bringing this Action is essential because "[s]uch actions could not be

sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their

efforts on behalf of the class."  *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL

2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

> **B.     The Court Should Award a Reasonable Percentage of the Common
>          Fund**

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of

the common fund obtained.  Courts routinely find that the percentage-of-the-fund method, under

which counsel is awarded a percentage of the fund that they created, is the preferred means to

determine a fee because it "'directly aligns the interests of the class and its counsel and provides a

powerful incentive for the efficient prosecution and early resolution of litigation.'"  *Wal-Mart Stores,*

*Inc. v. Visa U.S.A.*, 396 F.3d 96, 122 (2d Cir. 2005) (citation omitted); *see also Hayes v. Harmony*

*Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[A]s the district court recognized, the

prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of

class counsel with those of the class.").  The percentage approach also recognizes that the quality of

counsel's services is measured best by the results achieved and is most consistent with the system

typically used in the marketplace to compensate attorneys in non-class contingency cases.[3]

---

[3]     *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp.
2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs'
counsel with those of the class members because it bases the attorneys' fees on the results they
achieve for their clients, rather than on the number of motions they file, documents they review, or
hours they work. . . .  The percentage method also accords with the overwhelming prevalence of
contingency fees in the market for plaintiffs' counsel."); *Davis v. J.P. Morgan Chase & Co.*, 827
F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (the "advantages of the percentage method . . . are that it
provides an incentive to attorneys to resolve the case efficiently and to create the largest common
fund out of which payments to the class can be made, and that it is consistent with the system
typically used by individual clients to compensate their attorneys").

The Supreme Court has indicated that attorneys' fees in common fund cases generally should be based on a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class."). The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Savoie*, 166 F.3d at 460 (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). Indeed, the Second Circuit has acknowledged that the "trend in this Circuit is toward the percentage method." *Wal-Mart*, 396 F.3d at 122; *see also City of Providence*, 2014 WL 1883494, at *11-*12.[4]

Recently the Second Circuit reaffirmed these principles in rejecting an objection made to using the percentage approach for awarding attorneys' fees in PSLRA cases. *See Fresno Cty. Emps. Ret. Ass'n v. Isaacson*, 925 F.3d 63 (2d Cir. 2019) ("*Fresno*"). In *Fresno*, the Second Circuit reaffirmed that the percentage approach is appropriate to use in awarding attorneys' fees in PSLRA cases (*id.* at 72), and further held, in pertinent part, that:

---

[4]      All federal Courts of Appeal to consider the matter have approved the percentage method, with two circuits requiring its use in common fund cases. *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). The Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases. *See Faught*, 668 F.3d at 1242; *Swedish Hosp.*, 1 F.3d at 1271.

We thus have confidence in the district court as fiduciary of the class and ultimate decisionmaker on a class-action settlement to substantially alleviate the Objector's concerns about class counsel's incentives. Having obtained such reassurance, we hold that, where a class action results in a common-fund settlement for the benefit of the class, the common-fund doctrine applies and permits a district court to use its discretion to award class counsel either an unenhanced lodestar fee or a fee calculated as a percentage of the settlement fund. This principle applies even when claims are initiated pursuant to a statute with a fee-shifting provision.

*Id.*

The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class.  15 U.S.C. §78u-4(a)(6) (emphasis added).  Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions.  *See Veeco*, 2007 WL 4115808, at *3; *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 465-66 (S.D.N.Y. 2004).

Given the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger* and *Fresno*, as well as the trend among the district courts in this Circuit and the language of the PSLRA, the Court should award Lead Counsel attorneys' fees based on a percentage of the fund.

### C.     The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace.  *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989).  If this were a non-class action,

the customary fee arrangement would be contingent and in the range of 33% of the recovery. *See Blum*, 465 U.S. at 904 ("'In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.'") (Brennan, J., concurring) (citation omitted).

The requested 30% fee is well within the range of percentage fees awarded by this Court and within the Second Circuit in other comparable securities and antitrust cases. *See, e.g.*, *In re China Media Express Holdings, Inc.*, No. 11-CV-0804 (VM), 2015 U.S. Dist. LEXIS 181933, at *6 (S.D.N.Y. Sept. 18, 2015) (Marrero, J.) (awarding fees of 33.33% of $12 million recovery, plus expenses); *Gormley v. Magicjack Vocaltec Ltd.*, No. 16-cv-01869-VM, slip op. at 1 (S.D.N.Y. Jan. 19, 2018) (Marrero, J.) (awarding fees of 33.33% of $3.61 million recovery, plus expenses); *Anwar v. Fairfield Greenwich Ltd.*, No. 1:09-cv-00118 (VM), slip op. at 11-12 (S.D.N.Y. May 6, 2016) (Marrero, J.) (awarding fees of 30% of $55 million recovery, plus expenses); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758(VM), slip op. at 2 (S.D.N.Y. July 20, 2011) (Marrero, J.) (awarded fees of 27.5% of $70 million recovery, plus expenses); *In re BHP Billiton Sec. Litig.*, No. 1:16-cv-01445-NRB, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding fees of 30% of $50 million recovery, plus expenses); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, No. 1:12-cv-01203-VEC, 2015 WL 13639234, at *4 (S.D.N.Y. Oct. 15, 2015) (awarding fees of 30% of $33 million recovery, plus expenses); *Landmen Partners Inc. v. Blackstone Grp. L.P.*, No. 08-CV-03601-HB-FM, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (awarding fees of 33-1/3% of $85 million recovery, plus expenses); *Bd. of Trs. of the Operating Eng'rs Pension Tr. v. JPMorgan Chase Bank, N.A.*, No. 09-cv-09333-KBF, slip op. at 1 (S.D.N.Y. Nov. 20, 2013) (awarding fees of 30% of $23 million recovery, plus expenses); *Citiline Holdings, Inc. v. iStar Fin. Inc.*, No. 1:08-cv-

03612-RJS, slip op. at 1 (S.D.N.Y. Apr. 5, 2013) (awarding fees of 30% of $29 million recovery, plus expenses).[5]

### D.   The Fee Request Is Reasonable Under the Lodestar Method

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to cross-check the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50. "Calculation of the lodestar, however, is simply the beginning of the analysis." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *In re Ivan F. Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995). "Under the lodestar method, the court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work." *City of Providence*, 2014 WL 1883494, at *13. Performing the lodestar calculation here confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Lead Counsel and its paraprofessionals have spent, in the aggregate, 2,127 hours in the prosecution of this case producing a total lodestar amount of $1,643,866.75 when multiplied by Lead Counsel's billing rates. *See* accompanying Declaration of Robert M. Rothman Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶4 ("Robbins Geller Decl.");[6] Declaration of Corey D. Holzer Filed on Behalf of Holzer

---

[5]     All unreported authorities are attached hereto as Exhibits A-E.

[6]     In determining whether the rates are reasonable, the Court should take into account the attorneys' professional reputation, experience, and status. Here, Lead Counsel are experienced securities practitioners with track records of success, with Robbins Geller being among the most prominent and well-regarded securities practitioners in the nation. Therefore, the hourly rates are

& Holzer, LLC in Support of Application for Award of Attorneys' Fees and Expenses, ¶4 ("Holzer Decl.") (collectively, "Fee Declarations"). The amount of attorneys' fees requested by Lead Counsel herein, $2.7 million, represents a multiplier of 1.6 to counsel's aggregate lodestar.[7]

The requested 1.6 multiplier in this Litigation is well within (if not below) the range of multipliers commonly awarded in securities class actions and other comparable litigation. In cases of this nature, fees representing multiples above lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("'a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors'") (citation omitted); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Indeed, in complex contingent litigation, lodestar multipliers between 2 and 5 – a range that is above the requested 1.6 multiplier sought here – are commonly awarded. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Credit Suisse*, slip op. at 4 (awarding fee representing a multiplier of 4.7); *BHP Billiton*, 2019 WL 1577313, at *1 (awarding fees representing a 2.7 multiplier); *Comverse*, 2010 WL 2653354, at *5 (awarding fee representing a 2.78 multiplier); *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, No. 14-CV-8925 (KMW), 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (finding 3.14 lodestar multiplier "within the range of multipliers approved in

reasonable here. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (approving counsel's hourly rates).

[7]    The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Jenkins*, 491 U.S. at 283-84.

- 10 -

this Circuit"); *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, No. 1:08-cv-10783-LAP, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) (awarding 21% fee on $272 million settlement representing a 3.9 multiplier); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing multiplier of 5.3, which was "not atypical" in similar cases); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *In re BISYS Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (awarding 30% fee representing a 2.99 multiplier and finding that the multiplier "falls well within the parameters set in this district and elsewhere"); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (4.3 multiplier was appropriate in light of the contingency risk and the quality of the result achieved); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country").

Lead Counsel invested substantial time and effort prosecuting this Litigation against Defendants to a successful completion. The requested fee, therefore, is manifestly reasonable, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar. Moreover, as discussed below, each of the factors cited by the Second Circuit in *Goldberger* also strongly supports a finding that the requested fee is reasonable.

### E.   The Relevant Factors Confirm that the Requested Fee Is Reasonable

In *Goldberger*, the Second Circuit explained that whether the court uses the percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including:

- the time and labor expended by counsel;

- the risks of the litigation;

- the magnitude and complexity of the litigation;

- the requested fee in relation to the settlement;

- the quality of representation; and

- public policy considerations.

*Goldberger*, 209 F.3d at 50.  Consideration of these factors demonstrates that the requested fee is fair and reasonable.

### 1.    The Time and Labor Expended by Counsel

Lead Counsel has expended substantial time and effort pursuing the Litigation on behalf of the Class.  Since the Litigation commenced more than two years ago, Lead Counsel and its paraprofessionals devoted in excess of 2,100 hours to prosecuting the Class' claims.  As detailed in the Rothman Declaration, submitted herewith, Lead Counsel, among other things:

- conducted an extensive factual investigation, including numerous interviews of former OneMain employees conducted by Lead Counsel;

- researched the law relevant to the claims asserted and Defendants' potential defenses thereto, and drafted the detailed amended complaint;

- prosecuted and defended Defendants' motions to dismiss and reconsideration;

- worked extensively with a damages consultant;

- participated in lengthy arm's-length settlement negotiations and mediation with Defendants; and

- negotiated and drafted the Stipulation and exhibits thereto, as well as the motion for preliminary approval of the Settlement.

Rothman Decl., ¶¶5, 6-17, 20, 37-40, 48-49, 53-62, 82.

Moreover, Lead Counsel, with the assistance of its damages consultant, prepared the proposed Plan of Allocation based primarily on an analysis estimating the amount of artificial inflation in the price of OneMain common stock during the Class Period.  Throughout the Litigation, Lead Counsel staffed the matter efficiently and avoided any unnecessary duplication of effort.  Additional hours and resources will necessarily be expended assisting Members of the Class with the completion and

- 12 -

submission of their Proof of Claim and Release forms, shepherding the claims process, and responding

to Class Member inquiries.  *See Aponte v. Comprehensive Health Mgmt.*, No. 10 Civ. 4825 (JLC),

2013 WL 1364147, at *6 (S.D.N.Y. Apr. 2, 2013).  The significant amount of time and effort devoted

to this case by Lead Counsel to obtain a $9 million recovery, work that will not end with the Court's

approval of the Settlement, confirms that the 30% fee request is reasonable.

### 2.     The Risks of the Litigation

#### a.     The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee

The risk undertaken in the litigation is often considered the most important *Goldberger*

factor.  *Goldberger*, 209 F.3d at 54; *Comverse*, 2010 WL 2653354, at *5; *Telik*, 576 F. Supp. 2d at

592.  The Second Circuit has recognized that the risk associated with a case undertaken on a

contingent fee is an important factor in determining an appropriate fee award:

> "No one expects a lawyer whose compensation is contingent upon his success to
> charge, when successful, as little as he would charge a client who in advance had
> agreed to pay for his services, regardless of success.  Nor, particularly in complicated
> cases producing large recoveries, is it just to make a fee depend solely on the
> reasonable amount of time expended."

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted).  "Little about litigation

is risk-free, and class actions confront even more substantial risks than other forms of litigation."

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y.

May 14, 2004); *Am. Bank Note*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this

[contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec.*

*Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the

attorney's contingent fee risk is an important factor in determining the fee award.").  This risk

encompasses not just the risk of no payment, but also the risk of underpayment.  *See In re Cont'l Ill.*

*Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court

- 13 -

4841-9056-6041.v3

failed to account for, among other things, risk of underpayment to counsel). When considering the reasonableness of attorneys' fees in a contingency action, the court should consider the risks of the litigation at the time the suit was brought. *See Goldberger*, 209 F.3d at 55; *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *3 (S.D.N.Y. Dec. 28, 2011).

Lead Counsel undertook this Litigation on a wholly-contingent fee basis, investing a substantial amount of time and money to prosecute a risky action without a guarantee of compensation or even the recovery of expenses. Unlike Defendants' counsel, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel has not been compensated for any time or expenses since this case began in February 2017, and would have received no compensation or payment of its expenses had this case not been resolved successfully.

From the outset, Lead Counsel understood that it was embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for investing the time and money the case would require. In undertaking that responsibility, Lead Counsel was obligated to assure that sufficient attorney and paraprofessional resources were dedicated to prosecuting the Litigation and that funds were available to compensate staff and to pay for the considerable costs which a case such as this entails. Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

In addition to advancing litigation expenses, Lead Counsel faced the possibility that it would receive no attorneys' fees at all. It is wrong to presume that a law firm handling complex contingent litigation always wins. There are numerous instances where, in contingent cases such as this one, plaintiff's counsel have expended thousands of hours without receiving any compensation.[8]

---

[8]     The risk of no recovery in complex cases of this type is real, and is heightened when lead counsel press to achieve the very best result for those they represent. There are numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration despite

- 14 -

Losses in contingent-fee litigations, especially those brought under the PSLRA, are exceedingly expensive. Lead Counsel's assumption of the contingency fee risk strongly supports the reasonableness of the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### b.   Risks of Establishing Liability

While Lead Plaintiff remains confident in his ability to prove his claims, he recognizes that his ability to prove liability was far from certain. Rothman Decl., ¶75. As detailed in the Rothman Declaration and in the Settlement Memorandum, Defendants raised numerous challenges to the falsity of the misstatements and omissions alleged and to whether they were made with scienter. *Id.*, ¶¶63-68. These arguments would no doubt be raised again on summary judgment. Therefore, whether Lead Plaintiff ultimately would prove liability under the Securities Exchange Act was far from assured.

---

their diligence and expertise. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 725 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor); *In re Oracle Corp. Sec. Litig.*, No. C 01-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (court granted summary judgment for defendants after eight years of litigation, after plaintiffs' counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *Robbins v. Koger Props.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion).

### c.     Risk of Establishing Causation and Damages

With respect to proving causation and damages, Defendants would continue to attack the causal link between Defendants' misstatements and Lead Plaintiff's losses as well as the damages calculations of Lead Plaintiff's consultant, which, if accepted, would severely limit, or entirely eliminate, the amount of damages that could be recovered.  *Id.*, ¶70.  Defendants would never concede these points and would continue to press this defense at summary judgment and trial.

There is no way to know how a jury would decide these issues.  The damage assessments of the parties' respective trial experts would become a "battle of experts."  The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for Defendants to minimize the Class' losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions.  Thus, even if Lead Plaintiff prevailed as to liability at trial, the judgment obtained could well have been only a fraction of the damages claimed.

### 3.     The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel.  *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992).  It is widely recognized that "shareholder actions are notoriously complex and difficult to prove."  *See In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 (WHP), 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008); *see also FLAG Telecom*, 2010 WL 4537550, at *27.  "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA."  *In re Ikon Sols., Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.  These

challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation."). This case was no exception. As described herein, this Litigation involved a number of difficult and complex questions concerning liability and damages that would have required extensive additional efforts by Lead Counsel and consultation with accounting and economic experts.

The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditures of judicial resources. Because this case revolved around "difficult, complex, hotly-disputed, and expert-intensive issues," this factor favors awarding a 30% fee. *City of Providence*, 2014 WL 1883494, at *16.

### 4. The Quality of Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee. Lead Counsel submits that the quality of the representation here is best evidenced by the quality of the result achieved. *See, e.g.*, Settlement Memorandum at 15 (recovering approximately 9.7% of reasonably recoverable damages); *see also FLAG Telecom*, 2010 WL 4537550, at *28; *Bisys*, 2007 WL 2049726, at *3. Here, Lead Counsel demonstrated a great deal of skill to achieve a settlement at this level in this particular case. Lead Counsel are experienced securities class action and complex litigation practitioners. This Settlement is attributable to the diligence, determination, hard work, and reputation of counsel, who developed, litigated, and successfully negotiated the Settlement of this Litigation and a substantial immediate cash recovery in a very difficult case, without the risk of further litigation. *See Teachers' Ret. Sys.*, 2004 WL 1087261, at *6.

Finally, courts repeatedly recognize that the quality of the opposition faced by plaintiff's counsel should also be taken into consideration in assessing the quality of counsel's performance. *See, e.g.*, *Marsh ERISA*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further provides the caliber of representation that was necessary to achieve the Settlement."); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"). Here, Defendants are represented by lawyers from Cleary Gottlieb Steen & Hamilton LLP, who presented a very skilled defense and spared no effort in representing their clients. Notwithstanding this formidable opposition, Lead Counsel's ability to present a strong case and to demonstrate its willingness to continue to vigorously prosecute the Litigation through trial and then inevitable appeals enabled Lead Counsel to achieve a very favorable Settlement for the benefit of the Class.

### 5.     Public Policy Considerations

A strong public policy concern exists for rewarding firms for bringing successful securities litigation. *See Salix*, 2017 WL 3579892, at *7 (fee award was "appropriate, and not excessive, to encourage further securities class actions"); *FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."). Accordingly, public policy favors granting Lead Counsel's fee and expense application here.

6.     **The Class' Reaction to the Fee Request to Date Supports the Requested Fee**

To date, the Claims Administrator has sent more than 27,000 copies of the Notice to potential Class Members and nominees informing them, *inter alia*, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount, plus expenses not to exceed $100,000, plus interest on both amounts, plus an award to Lead Plaintiff in an amount not to exceed $5,000.[9]  The time to object to the fee request expires on July 19, 2019. To date, not a single objection to the fee and expense amounts set forth in the Notice has been received.  Such a "low level of objection is a 'rare phenomenon.'"  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (citation omitted).  Moreover, "a significant number of investors in the class [are] 'sophisticated' institutional investors that had considerable financial incentive to object [to the settlement] had they believed [the settlement was unfair or] the requested fees were excessive."  *Id.*

Additionally, Lead Plaintiff, an individual investor charged by the Court and the PSLRA with responsibility for monitoring Lead Counsel, supports the fee request.  *See* Galestan Decl., ¶6. Here, Lead Plaintiff played an active role in the Litigation and closely supervised the work of Lead Counsel.  *See id.*, ¶¶3-4.  Accordingly, Lead Plaintiff's endorsement of the fee request supports its approval.  The fact that no objections have been received to date supports the fairness of the fee request.

## IV.     LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION

Lead Counsel also respectfully requests an award of $46,706.65 in expenses incurred while prosecuting the Litigation.  Lead Counsel has submitted declarations regarding these expenses,

---

[9]      *See* Mulvihill Decl., ¶10.

- 19 -

which are properly recovered by counsel.  *See* Robbins Geller Decl., ¶¶5-6; Holzer Decl., ¶¶5-6. *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at \*6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "'for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation"'") (citation omitted); *FLAG Telecom*, 2010 WL 4537550, at \*30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable expenses necessary to the representation of the class).

Counsel's expenses include, for example, the costs of hiring a damages consultant, travel, mediating the Class' claims, and computerized research.  A complete breakdown by category of the expenses incurred is set forth in the Fee Declarations.  These expenses were critical to Lead Plaintiff's success in achieving the Settlement.  *See Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys . . . [f]or this reason, they are properly chargeable to the Settlement fund.").  So far, not a single objection to the expense amount set forth in the Notice has been received.  Accordingly, Lead Counsel respectfully requests payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## V.   LEAD PLAINTIFF SHOULD BE AWARDED HIS REASONABLE TIME AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4)

Lead Plaintiff Afshin Galestan seeks approval for an award of $3,500.00 for the time he spent representing the Class.  The PSLRA specifically provides that an "award of reasonable costs and

4841-9056-6041.v3

expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. §78u-4(a)(4).

Lead Plaintiff dedicated time to the Litigation by reviewing significant pleadings, briefs, and certain correspondence in the Litigation and monitoring the progress of settlement negotiations.  *See* Galestan Decl., ¶4.  In addition, Lead Plaintiff filed the initial complaint and stepped forward to serve as the lead plaintiff after no other OneMain investor sought to lead this Litigation.  *See* Rothman Decl., ¶18.  Thus, without Lead Plaintiff's efforts (*id.*, ¶¶5, 16-17, 20, 37-40, 48-49, 53-62, 82), no recovery would have occurred for the benefit of the Class.

Numerous courts, including this Court, have approved reasonable awards to compensate lead plaintiffs for the time and effort they spent on behalf of a class.  *See Gormley*, slip op. at 3 (awarding $5,000 each to two individual investor lead plaintiffs); *Kinross Gold*, 2015 WL 13639234, at *4 (awarding $16,800.11 to lead plaintiff and additional named plaintiffs "to compensate them for their reasonable costs and expenses directly relating to their representation of the Class"); *Hicks*, 2005 WL 2757792, at *10 ("Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.").

Lead Plaintiff took an active role with the prosecution of the Litigation.  Galestan Decl., ¶4.  This is precisely the type of activity that courts have found support awards to class representatives.  *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award of $30,000 to lead plaintiffs "to compensate them for the time and effort they devoted on behalf of a class"); *FLAG Telecom*, 2010 WL 4537550, at

*31 (approving award of $100,000 to lead plaintiff for time spent in the litigation); *Veeco*, 2007 WL 4115808, at *12 (characterizing such awards as "routine[]" in this Circuit).

The Notice sufficiently informed potential Class Members that such expenses would be sought.  Mulvihill Decl., Ex. A (Notice) at 3.  The request by Lead Plaintiff is supported by a declaration, is reasonable and fully justified under the PSLRA, and should be granted.  To date, there have been no objections to this request.

## VI.    CONCLUSION

Based on the foregoing, and the entire record herein, Lead Counsel respectfully requests that the Court award attorneys' fees of 30% of the Settlement Amount, plus expenses in the amount of $46,706.65, plus interest on both amounts, and $3,500.00 to Lead Plaintiff Afshin Galestan for his time representing the Class.

DATED:  July 3, 2019                     Respectfully submitted,

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         SAMUEL H. RUDMAN
                                         ROBERT M. ROTHMAN
                                         MICHAEL G. CAPECI


                                                  s/Robert M. Rothman
                                         _____
                                              ROBERT M. ROTHMAN

                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)
                                         srudman@rgrdlaw.com
                                         rrothman@rgrdlaw.com
                                         mcapeci@rgrdlaw.com

4841-9056-6041.v3

HOLZER & HOLZER, LLC
COREY D. HOLZER (*pro hac vice*)
MARSHALL P. DEES (*pro hac vice*)
1200 Ashwood Parkway, Suite 410
Atlanta, GA  30338
Telephone:  770/392-0090
770/392-0029 (fax)
cholzer@holzerlaw.com
mdees@holzerlaw.com

Lead Counsel for Plaintiff

4841-9056-6041.v3

<u>CERTIFICATE OF SERVICE</u>

I, Robert M. Rothman, hereby certify that on July 3, 2019, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

/s/ Robert M. Rothman
_____
ROBERT M. ROTHMAN
